430 F.2d 215
 UNITED STATES ex rel. Stephen J. B., Appellee,
v.
Joseph A. SHELLY, Chief Probation Officer, Probation Department, Supreme Court, Second Judicial Department, Kings County, New York, Appellant.
 No. 362.
 Docket 33957.
 United States Court of Appeals, Second Circuit.
 Argued November 11, 1969.
 Decided June 30, 1970.
 
 George Danzig Levine, Asst. Dist. Atty., Nassau County, N. Y. (William Cahn, Dist. Atty., Nassau County, N. Y.), for appellant.
 Susan Crandall, Legal Aid Society of Nassau County, Mineola, N. Y. (James J. McDonough, Attorney in Charge, Legal Aid Society of Nassau County, Mineola, N. Y., Matthew Muraskin, Mineola, N. Y., on the brief), for appellee.
 Before MOORE, KAUFMAN and HAYS, Circuit Judges.
 IRVING R. KAUFMAN, Circuit Judge:
 
 
 1
 This appeal presents a single question: did the sixteen year old defendant voluntarily waive his right to remain silent when questioned by the police?
 
 
 I. Introduction
 
 
 2
 There is no basic dispute about the facts. The defendant, Stephen J. B., and a teen-age friend were guests at a wedding. On the return trip in the friend's parents' car, Stephen, who had apparently had too much to drink, became sick. The parents in their annoyance put the two out on the road some miles from home. At some point late that night or early the next morning the boys took a parked car, and were driving it at about 6 p. m. the following evening, August 23, 1967, when a patrolman saw them make a turn without signaling.[1] He stopped the car and asked the friend, who was driving, for his license and registration. When there appeared to be some fumbling about, he asked, "Do you have the registration, or is it stolen?" At this point both youths ran off. The patrolman immediately radioed for help, and took off in pursuit. He caught Stephen, and forcibly returned him to the car. On the way back he said, "You don't have to make any statements at this time or any future time, and if you want a lawyer I'll get you a lawyer." He failed to tell him that his statements could be used against him, or that if indigent, counsel would be appointed for him. See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). When they returned to the car, the officer asked him, "Is that car stolen?" and, apparently without hesitation, he admitted that it was. At this juncture Sergeant O'Donnell arrived in response to the call for assistance. Seeing Stephen in the grip of the patrolman (who had him by the collar), O'Donnell inquired bluntly why he had run away from the car; he responded that he had taken flight because he believed the car was stolen. Only after the petitioner had thus admitted his guilt to both officers, did Sergeant O'Donnell proceed to give him the full Miranda warnings, asking him if he waived his right to remain silent. The response was affirmative, and Stephen admitted again that they had stolen the car and also supplied his friend's name. At a point not clear from the record, the petitioner was handcuffed, and after accompanying the police to the friend's house, and then making an effort to find and indicate to the police the exact place from which the car was taken, he was brought to the station house. There petitioner was again given the full Miranda warnings, and his handcuffs were removed. He made another oral admission of guilt, and wrote a confession with his own hand.[2] All seem to agree that no force or threats were used to extract the confession, and no one questions that the police made an effort to advise Stephen of his rights. The police did testify, however, that he looked as though he had slept in his clothes, seemed tired, and cried in the station house.
 
 
 II. Prior Proceedings
 
 
 3
 Prior to trial, Stephen moved to suppress all statements made by him on the ground that they were involuntary. A "Huntley hearing," called such after the decision of the New York Court of Appeals in People v. Huntley, 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1965), was held pursuant to New York Code of Criminal Procedure § 813-f to 813-i (McKinney Supp.1969). At that hearing the County Court excluded the first two oral statements since they had not been preceded by proper Miranda warnings, but admitted the second statement to Sergeant O'Donnell, and the oral admission at the station house. Appellee, confronted with the admission of his confession against him, pleaded guilty.
 
 
 4
 New York, by statute, abrogates the usual rule that a plea of guilty waives all non-jurisdictional defects. In the case of a guilty plea following an unsuccessful attempt to suppress a confession, New York Code Crim.Proc. § 813-g (McKinney Supp.1969) specifically permits an appeal from the pre-trial suppression decision. If the defendant prevails, he will of course be afforded a trial. People v. Dunleavy, 26 A.D.2d 649, 272 N.Y.S.2d 795, cert. denied, 385 U.S. 859, 87 S.Ct. 109, 17 L.Ed.2d 85 (1966).
 
 
 5
 Stephen followed the statutory procedure to the New York Court of Appeals, which affirmed on the ground that the later confessions were voluntary and that he had waived his rights under Miranda. People v. B., 23 N.Y.2d 611, 298 N.Y.S.2d 489, 246 N.E.2d 344 (1969). Relying on our decision in United States ex rel. Rogers v. Warden of Attica State Prison, 381 F.2d 209, 215 (2d Cir. 1967), which applied the New York rule on guilty pleas, Stephen sought habeas in the Federal District Court for the Eastern District of New York.[3]
 
 III. Waiver
 
 6
 Based on the uncontested facts found in the state court proceedings, we have no reason to upset the district judge's conclusion that petitioner did not waive his Miranda rights.[4]
 
 
 7
 Waiver is "an intentional relinquishment or abandonment of a known right or privilege." Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). In the absence of counsel, a "heavy burden" rests on the state to show a genuine waiver. Miranda v. Arizona, 384 U.S. 436, 475, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1969). We are not constrained to hold that there is a per se rule barring all waivers by minors; but in the circumstances of this case, Stephen's age was made all the more crucial by attendant factors that heightened the likelihood that his waiver was other than intelligent and voluntary, and which made it virtually impossible for the state to satisfy the "heavy burden" imposed upon it by Miranda.
 
 
 8
 As we have indicated, both the state and federal courts agree here that the original admissions to the patrolman and to O'Donnell were improperly secured. Whether we characterize the rationale as the "cat-out-of-the-bag" theory or not, the simple, likely conclusion is that when a suspect, in the rapid sequence of events present here, has already admitted his guilt, he will be far less likely to give intelligent consideration to later requests to waive his right to remain silent and to have counsel present, since he will regard them as meaningless. See Darwin v. Connecticut, 391 U.S. 346, 350-351, 88 S.Ct. 1488, 20 L.Ed.2d 630 (1968) (Harlan, J., concurring and dissenting); United States v. Bayer, 331 U.S. 532, 540-541, 67 S.Ct. 1394, 91 L.Ed. 1654 (1947). Had petitioner been told that his prior admissions were invalid, or were there even the slightest basis in the record for inferring that he might have known that he had not yet legally incriminated himself when he made the third and fourth admissions, we might decide otherwise; but he was not, and there is not. The factors are closely intertwined and each admission cannot be viewed without reference to what happened so shortly before. And his age and his lack of prior contact with the police militate not only against finding a waiver, but against a specific finding of awareness of the invalidity of his first admissions.
 
 
 9
 The "cat-out-of-the-bag" theory is hardly the only evidence pointing to the absence of a legally sufficient waiver. Petitioner was 16 years of age at the time of the events described. He had never been in difficulty with the police before, but on this particular night he was recaptured after fleeing from a stolen car, virtually held up by the scruff of the neck, handcuffed and taken to the police station. Once there he was alone, deserted by his friend (the driver of the auto), without any assistance from his parents or a lawyer. Testimony by police officers indicated that at the station house he looked tired and seemed to have slept in his clothes, and at one point even appeared to have been crying. Under the "heavy burden" that Miranda imposes when no counsel is present, 384 U.S. at 475, 86 S.Ct. 1602, petitioner did not genuinely waive his right to have counsel present and to remain silent.
 
 
 10
 The writ shall issue unless the state within 30 days sets a date for a new trial.
 
 
 
 Notes:
 
 
 [1]
 The transcript of the pre-trial suppression hearing indicates that the time was 6 p.m., and not 6 a. m., as the District Judge stated. United States ex rel. B. v. Shelly, 305 F.Supp. 55, 56 (S.D.N.Y. 1969)
 
 
 [2]
 The handwritten confession was not offered in evidence at theHuntley hearing, and so the state courts did not pass on its admissibility. See 23 N.Y.2d at 613 n. 1, 298 N.Y.S.2d at 492 n. 1, 246 N.E. 2d at 346 n. 1.
 
 
 [3]
 Despite what is said in the dissent, we see nothing in McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (May 4, 1970), reversing United States ex rel. Richardson v. McMann, 408 F.2d 48 (2d Cir. 1969), which indicates a result contrary to that we reach here. That opinion, while emphasizing the importance of counsel in insulating guilty pleas from collateral attack, specifically did "not here consider whether a conviction, based on a plea of guilty entered in a State permitting the defendant pleading guilty to challenge on appeal the admissibility of his confession (as in New York after July 16, 1965, see n. 11,supra), would be open to attack in federal habeas corpus proceedings on the ground that the confession was coerced. Cf. United States ex rel. Rogers v. Warden, 381 F.2d 209 (C.A.2d Cir. 1967)."
 The reason for distinguishing Rogers, and its companion case, United States ex rel. Molloy v. Follette, 391 F.2d 231, 232 (2d Cir. 1968), is adequately explained by examining the rationale of those opinions. They emphasized that the New York procedure, which permits an appeal from a suppression hearing despite a subsequent guilty plea, was designed to encourage pleas of guilty. Were the federal courts to deny the defendant his federal remedies in situations where the state would permit him to avail himself of them, we would not only make the New York statute "a trap rather than the beneficent and `enlightened statute'" it was meant to be, but would also run the risk of frustrating state policy by inhibiting guilty pleas. See United States ex rel. Molloy v. Follette, 391 F.2d 231, 232 (2d Cir. 1968). As Molloy and Rogers are unaffected by either the language or the result in Richardson, we adhere to what was said there.
 We regard appellant's contention that a person on probation is not "in custody" for the purposes of § 2241 as frivolous. Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963) clearly holds that parole is custody; we are directed to no reason or authority which would distinguish probation from parole in habeas corpus applications. See Petition of Engle, 218 F.Supp. 251 (D.C.Ohio 1963) (probation is "custody"), aff'd Engle v. United States, 332 F.2d 88 (6th Cir.), cert. denied, 379 U.S. 903, 85 S.Ct. 192, 13 L.Ed.2d 176 (1964).
 
 
 [4]
 The State has not raised the question of the deference required to be given to the determination of the voluntariness of the waiver by the state courts under 28 U.S. C. § 2254(d), added by Pub.L. 89-711, § 2, 80 Stat. 1105 (1966). The issue whether and, if so, how far the statute applies to such a determination, as distinguished from one of "basic fact," is a serious one, whose decision would require detailed consideration of the opinions in Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469, 541, 67 S.Ct. 1394, 91 L.Ed. 1654 (1953) and Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), and the long history leading up to the 1966 legislation. In view of the parties' failure to discuss this and the possibility that illumination on the question may be cast as a result of the grant of certiorari, 38 L.W. 3309 (Feb. 24, 1970), to review Wilson v. Atchley, 412 F.2d 230 (9 Cir. 1969), we leave the issue for another day and assume, as the parties have done, that the question of voluntary waiver was open to the fullest scrutiny by the district judge
 
 
 HAYS, Circuit Judge (concurring):
 
 11
 Although I recognize the considerable force of Judge Moore's dissent, I concur with Judge Kaufman on the ground set forth in Footnote 4 of his opinion, i. e., that since § 2254(d) was not raised by the parties and was therefore not covered in their briefs and arguments, this is not an appropriate case in which to resort to that statute in order to reverse the decision of the district court.
 
 MOORE, Circuit Judge (dissenting):
 
 12
 The majority at the outset states "This appeal presents a single question: did the sixteen-year-old defendant voluntarily waive his right to remain silent when questioned by the police?" The opinion then proceeds on the assumption of this basic fallacy.
 
 
 13
 After a two-day hearing in the County Court of Nassau County to suppress alleged confessions, during which witnesses were subjected to direct and cross-examination to "determine the admissibility of the oral statements that were allegedly taken in this case," the County Judge suppressed Stephen's first two statements to the police but found that, after concededly adequate Miranda warnings, Stephen had affirmatively waived his rights to give a statement and that that statement was admissible. Stephen then pleaded guilty and, under the Youthful Offender Act, was given a suspended sentence and placed on probation. Pursuant to New York Code Crim.Proc. § 813-g (McKinney Supp.1969), Stephen appealed the ruling which held two of his confessions admissible. The decision of the County Court was affirmed by the Appellate Division of the Second Department and unanimously affirmed by the New York Court of Appeals which, in an opinion reviewing the law and the facts, concluded that "the record clearly supports the affirmed findings of fact of the courts below that defendant affirmatively and intelligently waived his rights before making his confession. Indeed, defendant does not dispute the fact that he understood his constitutional rights, yet voluntarily confessed." People v. B., 23 N.Y.2d 611, 617, 298 N.Y.S. 2d 489, 496, 246 N.E.2d 344, 349.
 
 
 14
 Therefore, the only question before us is not whether the defendant voluntarily waived his right to remain silent — that has already been determined by New York's highest tribunal — but whether, once such a fact determination has been made in the state courts upon a full record, a federal district judge has the power to override and nullify such findings merely because he chooses to come to a contrary conclusion.
 
 
 15
 Stated somewhat differently, the issue is: to what extent does a district judge have the power to overrule the factual findings of the state courts, made on an adequate and fair record, there being no new evidence in the district court, in view of the provision of 28 U.S.C. § 2254(d) (8) that "* * * the burden shall rest upon the applicant to establish by convincing evidence that the factual determination by the State court was erroneous." This statute reflects the principles announced by the Supreme Court in Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).
 
 
 16
 This is not a case in which other and different facts were presented to the district judge because the judge admittedly took the facts from the opinion of the New York Court of Appeals. With no other facts before them, the district judge chose and the majority now choose to come to a conclusion, assertedly upon the same facts, diametrically opposed to the facts as found by New York's highest court.
 
 
 17
 In 1966 the Congress added subsections (d)-(f) to § 2554. Pub.L. 89-711 subsection (d) provides:
 
 
 18
 "(d) In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding in which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit * * *."
 
 
 19
 Eight exceptions are set forth under the "unless" provision. Only a portion of (8) might be pertinent. It reads "unless * * * the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record." The district court, however, obtained the facts exclusively from the State court record. Thus, the New York courts have made the "factual determination" required by Townsend v. Sain, 372 U.S. 293, 316, 83 S.Ct. 745, 9 L.Ed.2d 770. These facts reviewed by two State appellate courts culminated in the conclusion of New York's highest court that:
 
 
 20
 "The record clearly supports the affirmed findings of fact of the courts below that defendant was advised of his constitutional rights as required by Miranda (supra) before giving his confession and that he freely and intelligently waived these rights." 23 N.Y.2d at 613, 298 N.Y.S.2d at 492, 246 N.E.2d at 346.
 
 
 21
 Quite apart from the question of comity and a re-hearing of the factual issues (which did not take place here), the decision is at complete variance with the principles specified by the Congress in its enactment of 28 U.S.C. § 2254(d) wherein it directed that a state court "determination after a hearing on the merits of a factual issue * * * shall be presumed to be correct." The Congress assuredly could not have intended that once this determination had been made by a State judge in a Huntley hearing, and by five justices of the Appellate Division and seven judges of the New York Court of Appeals that their decision was to be overturned by a single federal judge who has seen and heard no witnesses.
 
 
 22
 The district court was in error in assuming that the New York courts left unanswered the question of whether Stephen "knowingly and willingly" waived his rights to silence and counsel under Miranda. A reading of the New York Court of Appeals opinion shows that this was the specific fact question upon which they did pass. There was no occasion whatsoever for the district judge to make his own independent inquiry. All factual disputes had been resolved after a fair hearing.
 
 
 23
 The overruling of thirteen State judges by one district judge seems all the more inexcusable where the bargaining of petitioner's counsel in return for petitioner's plea of guilty has resulted in a suspended sentence and a period of probation only.[1]
 
 
 24
 I would reverse the order of the district court and direct the dismissal of the petition.
 
 
 
 Notes:
 
 
 [1]
 In my opinion, the majority here fail completely to follow the clear teaching of the Supreme Court in its recent reversal of our decision in McMann v. Richardson et al., 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). And, of course, the district judge did not have the advantage of the Supreme Court's recent decision
 As the Supreme Court's posed the question: "The principal issue before us is whether and to what extent an otherwise valid guilty plea may be impeached in collateral proceedings by assertion or proof that the plea was motivated by a prior coerced confession."
 The Supreme Court's conclusion was that it found itself "in substantial disagreement with the Court of Appeals." A reading of that decision clearly reveals that had this case been added to the Richardson group that Court would have been in equal disagreement with the majority here. The identity of the issues appears from its opinion that "The issue on which we differ with the Court of Appeals arises in those situations involving the counselled defendant [as here] who allegedly would put the State to its proof if there was a substantial enough chance of acquittal, who would do so except for a prior confession [the majority's assumption] which might be offered against him, and who because of the confession decides to plead guilty to save himself the expense and agony of a trial and perhaps also to minimize the penalty which might be imposed [as here]." In summary, after a lengthy discussion of the effect of guilty pleas under various circumstances, the Court held that "a plea of guilty in a state court is not subject to collateral attack in a federal court on the ground that it was motivated by a coerced confession unless the defendant was incompetently advised by his attorney." And no such claim is made here.
 Therefore, unless we wish intentionally to disregard the Supreme Court's teachings in Richardson, we are required to reverse the District Court's order. Actually this case on its facts is far stronger for reversal than on the facts presented to the Supreme Court in Dash-Richardson. There we had reversed so that the facts might be developed upon a hearing; here the facts have been fully molded and the mold set in the New York courts. The argument that "there would have been no plea had there been no confession" and hence that "the plea is vulnerable" was squarely met by the Supreme Court's statement that "We are unable to agree with the Court of Appeals on this proposition." 90 S.Ct. at 1446.