■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. DAVID K. CHAPPLE, Appellant.— Appeal from a judgment of the County Court, Clinton County, convicting defendant on his plea of guilty of burglary in the third degree. The main question presented on this appeal is whether defendant's illegally obtained oral confession so " tainted " his subsequent written confessions, given after an unquestionable waiver of his *Miranda* rights, so as to render them inadmissible. In *People* v. *Tanner* (30 N Y 2d 102, 106), a case closely analogous to the instant case, the Court of Appeals stated: " Whether an accused believes himself so committed by a prior statement that he feels bound to make another, depends on his state of mind which is a fact question. Appellant testified at the *Huntley* hearing. He did not say that his prior statement had any effect on his later statement to the Assistant District Attorney. * * * Although counsel for appellant raised the question before the hearing Judge that the subsequent statement was ' tainted ' by the earlier ones, no factual basis for this appears in the record, not even the defendant's own expression of his state of mind. Nor did counsel state the ' cat-out-of-the-bag ' theory to be a ground of ' taint '." In the instant case, as in *Tanner,* defendant did not assert at the *Huntley* hearing, nor even specifically on this appeal, that his prior oral statement had any effect on his later written statements. We cannot say, on the instant record, that the trial court, which viewed the witnesses, could not properly determine that the disputed confessions were admissible. We find no merit in any of the other contentions advanced by the defendant, and, accordingly, the judgment of conviction should be affirmed. Judgment affirmed. Greenblott, J. P., Kane and Reynolds, JJ., concur; Cooke and Main, JJ., dissent and vote to reverse in the following memorandum by Cooke, J., Cooke, J. (dissenting). We dissent and vote to reverse. On December 3, 1971 at approximately 1:15 A.M., defendant and one Albert Besham were walking south along the side of Route 22 towards the City of Plattsburgh, when they were stopped by State Police Officer Luck in a troop car. After recognizing defendant and ascertaining Beshan's identity, Luck " grabbed [defendant] by the shoulder ", " told him I wanted to talk to him, and * * * put him in [the] car " so that he could talk to him. Beshan left the scene on foot. At that point defendant handed the trooper a crowbar he had been carrying beneath his clothing. According to his own testimony, the trooper then questioned defendant about recent burglaries, and defendant confessed to having just broken into the McAdam Beer Distributors building. The trooper then drove to the McAdam building where defendant indicated how he and Beshan had broken into the building. It was at this point that the trooper first gave defendant the *Miranda* warnings.

Upon being asked further questions about other burglaries with which Luck believed defendant was involved, defendant initially "declined to volunteer any information". After the trooper had driven to a VFW Post which had been recently burglarized, Luck told the defendant that he was suspected of being involved in the VFW and two other burglaries, and said to defendant, "As long as you have spoken to me about one, David, you might just as well come clean on the rest of [the burglaries]", and then defendant admitted his participation in three other burglaries. Defendant was then taken to a State Police station where, after he was advised again of his rights, his confessions were reduced to typewritten form by the trooper, and he was taken before a notary public, where he signed the confessions and had his signature notarized. Defendant was subsequently indicted in January, 1972, on four counts of burglary in the third degree and related charges of larceny. After a *Huntley* hearing on February 22, 1972, the court ruled that the four typewritten confessions signed by defendant were voluntarily given after he had been adequately advised of all of his rights. Defendant was subsequently convicted on his plea of guilty to one count of burglary in the third degree on October 10, 1972, and he was sentenced to an indeterminate term of imprisonment of from two years and four months to seven years. There being no dispute that defendant was given and waived his *Miranda* rights prior to reciting the confessions which were reduced to writing, the question to be determined is whether said confessions were "tainted" by the initial illegally obtained oral confession and therefore made inadmissible (see *People* v. *Tanner*, 30 N Y 2d 102). In *Miranda* v. *Arizona* (384 U. S. 436), it was stated at page 444: "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." It is clear that the custodial interrogation commenced when Luck put defendant in his car and that the initial confession to the McAdam burglary preceded any *Miranda* warning. Furthermore, Luck's own testimony is proof that, as a matter of law, the relation between the illegally obtained oral confession preceding the *Miranda* warnings and the later confessions is so close that one must say that the facts of the former control the character of the latter (*People* v. *Stephen J. B.*, 23 N Y 2d 611). The United States Court of Appeals, Second Circuit, in a habeas corpus proceeding arising out of *People* v. *Stephen J. B. (supra)* and in which a new trial was ordered, stated, "Whether we characterize the rationale as the 'cat-out-of-the-bag' theory or not, the simple, likely conclusion is that when a suspect, in the rapid sequence of events present here, has already admitted his guilt, he will be far less likely to give intelligent consideration to later requests to waive his right to remain silent and to have counsel present, since he will regard them as meaningless." (*United States ex rel. B.* v. *Shelly*, 430 F. 2d 215, 218, presenting an analogous factual pattern.) This reasoning is equally apposite to the instant case and mandates reversal.