**UNITED STATES of America**

v.

**Vincenzo CONSIGLIO et al.**

**Crim. No. H–24.**

United States District Court,
D. Connecticut.

March 4, 1975.

Paul E. Coffey, Sp. Atty., Dept. of Justice Organized Crime Strike Force, Hartford, Conn., for plaintiff.

W. Paul Flynn, New Haven, Conn., for Vincenzo Consiglio.

Joseph A. Licari, Jr., New Haven, Conn., for Fred Campagnuolo.

William P. Murray, Jr., West Hartford, Conn., for Joseph DiPietro.

Milton I. Caplan, New Haven, Conn., for John Laudano.

John V. Cassidento (deceased), West Haven, Conn., Stephen R. Ketaineck, West Haven, Conn., for Gary Zimmerman.

J. Daniel Sagarin Bridgeport, Conn., for James DeNegris, Jr.

Charles A. Pulaski, Jr., New Haven, Conn., for Carmello Coco.

John P. McKeon, Hartford, Conn., for Benjamin Kaner.

MEMORANDUM OF DECISION ON DEFENDANTS' MOTION TO SET ASIDE THE JUDGMENT UPON THE GROUND OF NEWLY DISCOVERED EVIDENCE

BLUMENFELD, District Judge.

Defendants were charged in a nine-count indictment filed on October 30, 1970 with substantive and conspiracy violations of the interstate gambling laws. Pre-trial motions pursuant to 18 U.S.C. § 2518(10)(a) (1970) were filed to suppress the evidence obtained by the interception of wire communications on the grounds that in securing wiretap au-

thorization the government had failed to comply with 18 U.S.C. § 2516(1) (1970).[1] These motions were denied by Judge Clarie in a thoroughly reasoned opinion which set forth a full explication of the facts found and the evidence to support them. United States v. Consiglio, 342 F.Supp. 556 (D.Conn.1972), aff'd, 486 F.2d 1397 (2d Cir. 1973), cert. denied, 417 U.S. 918, 94 S.Ct. 2624, 41 L.Ed.2d 223 (1974). On March 5, 1973, each of the defendants involved in the instant motion was convicted on his plea of nolo contendere[2] to one count of the indictment, and the government announced that it intended to move for dismissal of the remaining counts of the indictment at the time of sentencing.[3] Moreover, by agreement of the government and the defendants, a number of issues were reserved for appellate review. Among these issues, the only one which has relevance was the question of government compliance with 18 U.S.C. § 2516(1) (1970). On November 19, 1973, the Second Circuit summarily affirmed the ruling of the district court, and on June 19, 1974, the Supreme Court denied certiorari.

The defendants (hereafter petitioners) have now filed this "Motion to Set the Judgment Aside upon the Ground of Newly Discovered Evidence and for a Stay of Execution Pending Resolution of the Motion." The stay was granted by Judge Zampano and the matter was assigned to me as the sentencing judge.

■ The petitioners essentially contend that because Judge Clarie's denial of their suppression motion was based upon facts deduced from only the evidence before him at the time, unaugmented by allegedly newly discovered evidence, they are entitled to withdraw their pleas of nolo contendere and vacate the judgment of conviction. In their pretrial motions to suppress and on appeal, the petitioners had challenged the authenticity of Attorney General John Mitchell's initials on two memoranda dated February 13, 1970 and April 6, 1970, authorizing applications for the wiretaps from which was obtained the evidence which they were seeking to have suppressed. Under United States v. Giordano, 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974), it is now clear that 18 U.S.C. § 2516(1) requires that such authorizations must be personally approved by the Attorney General or a specially designated Assistant Attorney General. A failure to comply with that requirement leads to the suppression of the evidence obtained from the illegally authorized wiretap. Following the original hearing, Judge Clarie found that the

---

1. 18 U.S.C. § 2516(1) (1970) provides in relevant part:

"The Attorney General, or any Assistant Attorney General specially designated by the Attorney General, may authorize an application to a Federal judge of competent jurisdiction for, and such judge may grant in conformity with section 2518 of this chapter an order authorizing or approving the interception of wire or oral communications by the Federal Bureau of Investigation, or a Federal agency having responsibility for the investigation of the offense as to which the application is made . . . ."

2. The nolo contendere pleas admitted every essential element of the offenses well pleaded in the charge and left nothing to be done but render judgments of conviction. Lott v. United States, 367 U.S. 421, 426, 87 S.Ct. 1563, 6 L.Ed.2d 940 (1961); cf. United States v. Doyle, 348 F.2d 715, 719 (2d Cir.), cert. denied, 382 U.S. 843, 86 S.Ct. 89, 15 L.Ed.2d 84 (1965). Although none of the defendants who are party to this motion have yet served any part of the sentences which were imposed upon them, the imminence of incarceration is a sufficient basis for the exercise of habeas corpus jurisdiction. See Hensley v. Municipal Court, 411 U.S. 345, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973); Preiser v. Rodriguez, 411 U.S. 475, 486 n. 7, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973).

3. This was done, and the remaining counts against each defendant were dismissed at the time of sentencing. By pleading guilty to but one count in return for the dropping of several others by the prosecutor, these well-advised defendants avoided the risk of a more severe penalty. Cf. Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); Parker v. North Carolina, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970).

Attorney General's initials on the memoranda were genuine. He based this factual conclusion upon an affidavit of Sol Lindenbaum, Executive Assistant to the Attorney General, who attested that the "Attorney General approved a request for authority to apply for an interception order" with respect to the two wiretaps in question in this case. Affidavit of Mr. Sol Lindenbaum (Dec. 14, 1971). The court held that this affidavit constituted sufficient proof of the genuineness of the Attorney General's initials.[4]

The petitioners now assert that subsequent developments have undermined the basis for Judge Clarie's finding. On January 14, 1972, a deposition of Sol Lindenbaum was taken pursuant to an order of the United States District Court for the Western District of Pennsylvania in which he testified that he had *not* personally seen former Attorney General Mitchell initial the memoranda involved in that particular case, although he had attested, as in this case, that the initials were genuine. This, the petitioners argue, is newly discovered evidence which seriously opens to question the usefulness of Mr. Lindenbaum's affidavit to support Judge Clarie's finding. In addition, the petitioners alleged in their motion that a Dr. Phillip D. Bouffard of the Institute of Criminal Law and Procedure, Forensic Sciences Laboratory in Washington, D. C. had studied John Mitchell's initials on a number of questioned documents and had serious doubts about their genuineness.

## I.

■ The petitioners have characterized their motion as one to set the judg-

ment aside on the basis of newly discovered evidence pursuant to Fed.R.Crim.P. 33. However, it is clear that Rule 33 is inapplicable to the instant case. That rule provides a basis for obtaining a new trial. In the instant case, judgments of conviction were entered against the petitioners upon their pleas of *nolo contendere*—not after a trial.

The appropriate basis for the petitioners' motion is 28 U.S.C. § 2255 (1970) which provides federal prisoners with a remedy for attacking the sentence or judgment as broad as habeas corpus.[5] *See generally* United States v. Hayman, 342 U.S. 205, 219, 72 S.Ct. 263, 96 L.Ed. 232 (1952). Although the posture of this case is such as to make 28 U.S.C. § 2255 (1970) the appropriate vehicle for obtaining the relief they seek, two factors in the prior proceedings which relate to the availability of § 2255 warrant comment.

■ First, it is ordinarily held that where, as in this case, an issue has been considered and determined by the trial court and upheld on direct review by the Court of Appeals, it may not be collaterally relitigated, *see* Argo v. United States, 473 F.2d 1315 (9th Cir.), cert. denied, 412 U.S. 906, 93 S.Ct. 2298, 36 L.Ed.2d 972 (1973); Meyers v. United States, 446 F.2d 37 (2d Cir. 1971); Hardy v. United States, 127 U.S.App.D.C. 162, 381 F.2d 941 (1967). However, in Kaufman v. United States, 394 U.S. 217, 226, 89 S.Ct. 1068, 1074, 22 L.Ed.2d 227 (1969) it was held that where a petitioner makes a "substantial allegation of newly discovered evidence" the remedy under § 2255 is available to a federally convicted and sentenced criminal

4. Issues of fact on a motion to suppress evidence, permitted under Fed.R.Crim.P. 41(f), "shall be determined by the court with or without a jury or on affidavits or in such other manner as the court may direct." Fed.R.Crim.P. 12(b)(4).

5. § 2255 provides in relevant part:
   "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the

ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."

defendant.[6]  As noted above, the petitioners have alleged such new evidence, specifically, the handwriting analysis indicating that the initials on the memoranda authorizing the wiretaps were not those of John Mitchell.

■  A second factor in the prior proceedings presents a novel problem, but one that is likely to recur.  Ordinarily when a defendant enters a plea of guilty or *nolo contendere,* he waives all non-jurisdictional defects, including constitutional challenges to the prosecution that were or might have been raised at or before trial.  A collateral attack upon his plea would be limited to an inquiry into the voluntariness of the plea and the adequacy or competence of the advice provided him by counsel.  Tollett v. Henderson, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973);  McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970);  Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).

However, this is not the ordinary case. The petitioners, by stipulated agreement with the government and with the approval of the court, entered *nolo* pleas while reserving their right to appeal the court's ruling on their motion to suppress.  While the practice of permitting such qualified guilty or *nolo* pleas has not been widely accepted, *see* United States v. Mizell, 488 F.2d 97 (5th Cir. 1973) and cases cited therein, it has become an apparently sanctioned practice in the Second Circuit.  *See* United States v. Rothberg, 480 F.2d 534 (2d Cir.), cert. denied, 414 U.S. 856, 94 S.Ct. 159, 38 L.Ed.2d 106 (1973);  United States v. Mann, 451 F.2d 346 (2d Cir. 1971);  *cf.* United States v. Doyle, 348 F.2d 715, 719 (2d Cir.), cert. denied, 382 U.S. 843, 86 S.Ct. 89, 15 L.Ed.2d 84 (1965).[7]  Indeed, in the instant case a Second Circuit panel in a summary affirmance passed upon the merits of the issues reserved by the defendants and argued on appeal.[8]

One question raised by the instant motion is whether the reservation of the right to appeal an issue also preserves for the petitioners the right to apply for § 2255 relief with regard to reserved issues.[9]  In a directly analogous context, the Supreme Court in Lefkowitz v. Newsome, 420 U.S. 283, 95 S.Ct. 886, 43 L. Ed.2d 196 (1975) has just upheld the view that "where state law permits a de-

---

6.  The decision of the Court in *Kaufman* affirmatively resolved the wide disagreement which had theretofore existed among Courts of Appeals as to whether § 2255 was available to relitigate the denial of a motion to suppress.  *See* Kaufman v. United States, *supra,* 394 U.S. at 220–221 nn. 3 & 4, 89 S. Ct. 1068.

7.  In United States ex rel. Newsome v. Malcolm, 492 F.2d 1166 (2d Cir.), aff'd sub nom. Lefkowitz v. Newsome, 420 U.S. 283, 95 S.Ct. 886, 43 L.Ed.2d 196 (1975), Chief Judge Kaufman made the following observations about the New York State procedure allowing defendants to plead guilty while reserving for appeal certain specified constitutional issues:

"We have characterized the New York procedure as 'enlightened' for it permits a defendant whose sole defense is one of the specified constitutional claims neither to suffer nor impose on the state the burden of going to trial simply to preserve his claim—a procedure which precipitated the enactment of § 813–c.  *See* United States ex rel. Rogers v. Warden, 381 F.2d 209, 214 (2d Cir. 1967).  This new procedural

device manifested obvious legislative determinations that trials are not to be encouraged in order to preserve a ground for appeal and that guilty pleas in such cases would aid in avoiding additions to beleaguered trial calendars."  *Id.* at 1170 (footnote omitted).

8.  The Second Circuit's unpublished order affirming the judgments of conviction in this case stated in relevant part:

"The judgments of conviction entered in the United States District Court for the District of Connecticut, M. Joseph Blumenfeld, *Chief Judge,* are affirmed.  Appellants' principal argument on appeal relates to the proper authorization of the wire interceptions under Section 2516 of Title 18, United States Code.  This issue has been before this Court repeatedly and we have continued to follow United States v. Pisacano, 459 F.2d 259 (2d Cir. 1972)."

9.  While there is no question that the guilty pleas of the petitioners were voluntary and their counsel were competent, they were conditioned upon the admissibility of the wiretap evidence.

fendant to plead guilty without forfeiting his appeals on collateral constitutional claims, it would be a trap to the unwary if a defendant who waived his right to trial in reliance on the state appeal procedures was thereafter precluded from pressing his federal constitutional claims in the district court." United States ex rel. Newsome v. Malcolm, *supra*, 492 F.2d at 1170. *See* United States ex rel. Daneff v. Henderson, 501 F.2d 1180 (2d Cir. 1974); United States ex rel. (Stephen J.) B. v. Shelly, 430 F.2d 215 (2d Cir. 1970). The reasoning of *Newsome* would also seem to compel a similar result here.

■■ Both a federal and state defendant who reserves his right to appeal certain issues upon entering a plea of guilty or *nolo contendere* has simply not waived his right to further litigate the reserved issues. The reservation of such a right places such a defendant with respect to those issues in the same position as one who has gone to trial and has been adjudged guilty. If state defendants in that situation are to be afforded the right to present their claims in a federal habeas action, there is no persuasive reason why the analogous remedy of § 2255 should not be available to federal defendants. As recognized in Kaufman v. United States, *supra*, 394 U.S. at 228, 89 S.Ct. at 1075:

> "With regard to both [federal and state prisoners], Congress has determined that the full protection of their constitutional rights requires the availability of a mechanism for collateral attack. The right then is not merely to a federal forum but to full and fair consideration of constitutional claims. Federal prisoners are no less entitled to such consideration than are state prisoners. There is no

reason to treat federal trial errors as less destructive of constitutional guarantees than state trial errors, nor to give greater preclusive effect to procedural defaults by federal defendants than to similar defaults by state defendants. To hold otherwise would reflect an anomalous and erroneous view of federal-state relations." [10]
I thus conclude that a defendant who is permitted to reserve upon plea the right to appeal certain issues has not waived his right to litigate those issues collaterally under § 2255.[11]

■ A somewhat different problem —whether § 2255 permits a collateral attack upon the kind of error alleged here —has also been recently resolved by the Supreme Court. When Judge Clarie heard the original motions to suppress, the illegality asserted in support of them was the failure of the government to comply with the requirements of the wiretap statute, 18 U.S.C. § 2516(1), an error of less than constitutional dimensions. It was not until this past year that the Supreme Court in Davis v. United States, 417 U.S. 333, 346, 94 S. Ct. 2298, 2305, 41 L.Ed.2d 109 (1974) decided that a claim of error based on the "laws of the United States" as distinguished from one grounded in the Constitution, can provide a basis for § 2255 relief provided "the claimed error . . . was 'a fundamental defect which inherently results in a complete miscarriage of justice' . . . ." [Quoting from Hill v. United States, 368 U.S. 424, 429, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962)].

In United States v. Giordano, *supra*, the Court concluded that 18 U.S.C. § 2518(10)(a) required that wiretap evidence must be suppressed where, as alleged here, the government had not ob-

---

10. The reference in *Kaufman* to constitutional issues must now be read in light of the Supreme Court's recognition in United States v. Davis, 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974), *see infra*, that non-constitutional statutory claims of fundamental import are cognizable under § 2255.

11. Of course, with regard to those issues as to which no appeal right has been reserved, a defendant is limited to the traditional bases of § 2255 attack upon a guilty plea under Tollett v. Henderson, *supra*.

tained the personal authorization for the wiretap of the Attorney General or a specially designated Assistant Attorney General as required by 18 U.S.C. § 2516(1). The Court held that suppression, as provided for by § 2518(10)(a), was required because that statutory requirement is one of those "that directly and substantially implement[s] the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device." 416 U.S. at 527, 94 S.Ct. at 1832. By requiring strict compliance with the limitations on the exercise of power to seek wiretap authorization and specifically providing for the use of a motion to suppress as a safeguard against exceeding those limitations, Congress has unmistakably endorsed the judicially fashioned exclusionary rule which is the technique "adopted to effectuate the Fourth Amendment right of all citizens 'to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . .'" United States v. Calandra, 414 U.S. 338, 347, 94 S.Ct. 613, 619, 38 L.Ed.2d 561 (1974). Whatever limitation on the scope of § 2255's availability may exist by reason of the requirement that "the claimed error" must be "a fundamental defect" would not seem to present any bar to the consideration of the present motion.

## II.

■ With the remedy of § 2255 available to the petitioners, I turn next to consider the merits of their motion.

The petitioners allege that they have newly discovered evidence to prove that the information received by the government from its wiretap interceptions which induced them to plead *nolo contendere* was illegally obtained. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963) specifically identified just such a situation as one among several others which mandates a hearing by a habeas corpus court.[12] In discussing the principles to be applied in such a situation the Court instructed:

"The conventional notion of the kind of newly discovered evidence which will permit the reopening of a judgment is,[13] however, in some respects too limited to provide complete guidance to the federal district judge on habeas. If, for any reason not attributable to the inexcusable neglect of petitioner, see Fay v. Noia, [372 U.S. 391, 438–440, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963)], evidence crucial to the adequate consideration of the constitutional claim was not developed at the state hearing, a federal hearing is compelled." *Id.* at 317, 83 S.Ct. at 759 (footnote not in original).

■ While the reliability of Judge Clarie's earlier determination that the memoranda in issue were authorized by former Attorney General Mitchell is now attacked on the ground of newly discovered evidence, identified in *Townsend* as "(4)," and not on the ground identified as: "(5) the material facts were not adequately developed at the [federal] court hearing . . . .," 372 U.S. at 313, 83 S.Ct. at 757, I have not drawn a fine

12. *Townsend*, 372 U.S. at 313, 83 S.Ct. at 757, listed this situation as "(4) there is a substantial allegation of newly discovered evidence." In Kaufman v. United States, *supra*, 394 U.S. at 227, 89 S.Ct. 1068, the Court announced that all of the situations requiring the holding of a hearing on a petition by a state prisoner were applicable to § 2255 with the exception of one not relevant to the instant case.

13. The generally accepted criteria for a new trial based on newly discovered evidence are:

(1) the evidence has been discovered since the trial;
(2) it could not with due diligence have been discovered before that time;
(3) it is not merely cumulative or impeaching;
(4) it is material to the issues; and
(5) it will probably produce an acquittal at a new trial.

United States v. Puco, 338 F.Supp. 1252, 1254 (S.D.N.Y.1972), aff'd, 493 F.2d 1399 (2d Cir. 1974); United States v. Kahn, 472 F.2d 272 (2d Cir. 1973).

line between these two grounds. Rather, in view of the emphatic stress in Townsend on the importance of completeness in fact-finding where rights safeguarded by the Great Writ are involved, Fay v. Noia, *supra*, 372 U.S. at 399–406, 83 S.Ct. 822, I have treated them as overlapping.[14]

With the foregoing applicable principles in mind, I turn next to consider the evidence introduced at the hearing. The sole evidence presented by the petitioners was that of Dr. Phillip Bouffard who testified that on the basis of his comparison of the questioned initials with 60 verified exemplars of the "JNM" initials, it was his opinion that it was "highly probable" that the questioned initials on the memoranda authorizing applications for the wiretaps involved in this case were not written by John Mitchell. The principal basis for that opinion was a comparison of the height to width ratios of the exemplars with those of the questioned initials. Dr. Bouffard testified that the ratios found in the two questioned sets of initials fell well outside the range found in the exemplars. In addition, Dr. Bouffard noted some minor differences between the questioned and exemplar sets of initials in such characteristics as the width of the lower and upper loops of the "J"

and the degree of curvature in the upper loop of the "J". However, he himself realized that the failure of those questioned to match the exemplars could be explained reasonably.[15]

Such difficulty as exists when a decision by one judge on a motion to suppress is back again for relitigation before a different judge under § 2255 is alleviated in this case by the fact that opinion evidence from a handwriting expert was not presented before Judge Clarie. In that respect something new has been added.[16] It is elementary that, as the trier of facts, I am entitled to draw my own conclusion as to the genuineness of the initials "JNM" on the memoranda authorizing applications for the orders to intercept by comparing them with the admittedly genuine initial signatures on the exemplars.[17] Moore v. United States, 91 U.S. 270, 23 L.Ed. 346 (1875); In re Goldberg, 91 F.2d 996 (2d Cir. 1937). The opinion of Dr. Bouffard did not persuade me that the initials on the memoranda were not those of Attorney General Mitchell. To the contrary, my own inspection of the signatures on the questioned memoranda in comparison to the exemplars convinces me that they were written by him.

Furthermore, the government presented additional evidence relevant to the is-

---

14. There is considerable doubt as to whether an inference of diligence on the part of the petitioners in discovering the "new evidence" may be drawn from the allegations of their motion; nonetheless that evidence sufficiently suggests that "the material facts were not adequately developed" to justify entertaining their motion.

15. The exemplars were all written in one day, perhaps in response to a request for the production of exemplars. This method of producing exemplars for analysis and comparison is not ideal, as Dr. Bouffard recognized himself, because "as the person is writing over and over again the same thing, probably if they introduced some kind of quirk, [they would have a tendency] to continue that quirk." Testimony of Dr. Phillip Bouffard, Transcript (Sept. 16, 1974) 35.

The ideal kind of exemplars would be those "obtained over a period of several days or weeks or months in which the complete range of variation" would be available for analysis. *Id.*

16. Halliday v. United States, 380 F.2d 270, 272–273 (1st Cir. 1967), aff'd, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969) supports the view that where the issue to be relitigated calls for reweighing factual inferences the second hearing should be before a new trier.

17. 28 U.S.C. § 1731 (1970) states:
"The admitted or proved handwriting of any person shall be admissible, for purposes of comparison, to determine genuineness of other handwriting attributed to such person."

sue. This was properly received.[18] The government has filed another affidavit by Mr. Sol Lindenbaum. In that affidavit, Mr. Lindenbaum attests that the somewhat conclusory statement that the "Attorney General approved a request for authority to apply for an interception order" in his earlier affidavit "derived mainly from my familiarity with Mr. Mitchell's signed initials and examination of the signed initials appearing thereon." Affidavit of Mr. Sol Lindenbaum (September 30, 1974) ¶ (a). In addition, and more significantly, Mr. Lindenbaum described the normal business procedure employed by him in handling applications for wiretap authorization and submitting them to Mr. Mitchell for his approval. He describes that procedure as follows:

> "(b) I routinely prepared a memorandum to Attorney General Mitchell when I knew he would be in his office and would be in a position to act on a request from the Criminal Division that he authorize an application for an interception order. I did not prepare such a memorandum when it appeared that Mr. Mitchell would not be available to act on a request. Attached are copies of the memoranda which I prepared on February 13, 1970, and April 6, 1970, concurring in the Criminal Division's requests that the Attorney General grant authorizations for the interception order applications involved in this case.

> "(c) The attached copies of correspondence control cards contemporaneously prepared by my secretary contain entries indicating that the Attorney General had personally initialed the memoranda of February 13 and April 6, 1970, pertaining to this case. The last entry on the control card relating to the authorization of February 13, 1970, indicates that on that day the Attorney General initialed the memorandum and that the file was picked up by Jack O'Donnell. The final two entries on the correspondence control card relating to the authorization of April 6, 1970, indicate that the request from the Criminal Division was received in my office on April 6, 1970, and was reviewed and then transmitted by me to the Attorney General, that on the same day the Attorney General initialed the memorandum and that the file was picked up by David Holt."

The contents of this affidavit serve to fortify the conclusion which I have reached. Relitigation in this case has not been wholly worthless. The fuller consideration of the factual question at issue has resulted in a significant increase in the reliability of the findings made on the earlier motion.

The petitioners' motions are denied, and

The stay of execution is terminated as of March 14th, 1975, at 12 noon, when the petitioners shall surrender themselves to the United States Marshal or his deputy at his office at Hartford.

So ordered.

---

18. Townsend v. Sain, *supra*, 372 U.S. at 322, 83 S.Ct. at 762:

"To be sure, the state-court record is competent evidence [*cf.* 28 U.S.C. §§ 2245, 2247], and either party may choose to rely solely upon the evidence contained in that record, but the petitioner, and the State, must be given the opportunity to present other testimonial and documentary evidence relevant to the disputed issues."