OPINION OF THE COURT
John Copertino, J.
After a hearing at which the defendant did not testify, this court must determine the voluntariness and admissibility of certain oral statements made by defendant to a member of the Suffolk County Police Department.
The court’s findings of fact and conclusions of law follow.
On August 23, 1984, at approximately 5:00 p.m., Officer B., along with Sergeant P. and Patrolmen H. and M., departed from the First Precinct of the Suffolk County Police Department to go to North Amityville, "To find and arrest one Cool Williams or Calvin Davis”, the defendant. In the vicinity of Avon Drive and North Sunset, Officer B., who was driving the police vehicle, saw defendant in an automobile which was backing out of a driveway at 2 Avon Drive. As they ap *682 proached the driveway, Officer B. yelled to the female driver of the other vehicle to stop. Suddenly, Sergeant P. grabbed a shotgun which was in the police vehicle, held it out the window and yelled, "Drop it! Don’t move, we’re the police.” All of the officers then exited their vehicle.
Officer B. proceeded to the passenger side of the vehicle in which defendant was sitting, opened the door, ordered defendant out of the vehicle, and placed defendant under arrest.* Officer B. then noticed "a handgun and a couple of bullets” on the floor of the vehicle, and asked defendant whose gun was it, defendant replying "mine.” (The first statement.)
Officer B. then administered the fourfold Miranda warnings. When asked if he understood his rights, defendant. replied "Yes, I know all my rights, I’ve been through this before.” Defendant, when asked if he had a specific attorney he dealt with, stated, "I don’t need any attorney, I didn’t do anything.” Officer B. replied, "I have to ask these questions anyway. Having these rights in mind will you talk to me or would you prefer not to talk at all?” Defendant retorted, "I’ll talk, but I didn’t do anything.”
Defendant was then placed in the police vehicle, advised he was under arrest for robbery, and transported to the First Precinct, a journey of approximately 10 minutes. When at the Precinct and while walking to an interview room, Officer B. asked defendant where he had gotten the gun, to which defendant replied, "I got the gun from somebody who owed me some money, I got it a while ago.” (The second statement.)
The issue presented is whether or not the first statement by defendant was elicited in violation of Miranda v Arizona (384 US 436), and, if so, whether the subsequent assertion of the Miranda warnings and waivers purged the "taint”, thereby rendering the second statement admissible as part of the People’s direct case.
There is no doubt that defendant was in custody at the time he made his first statement (People v Yukl, 25 NY2d 585, cert denied 400 US 851). Because defendant made his first statement in response to a question from Officer B. — and prior to the recitation of the required fourfold Miranda warnings— this court concludes as a matter of law that the first statement must be suppressed (Miranda v Arizona, supra; People v Rodney P., 21 NY2d 1). However, this infirmity will not *683 prevent its use as a prior inconsistent statement in the event defendant testifies (People v Wise, 46 NY2d 321; People v Washington, 51 NY2d 214).
This court further concludes as a matter of law that the second statement given by defendant — after the recitation of the fourfold Miranda warnings, and a valid waiver thereof— need not be suppressed and can be used by the People in their case-in-chief (Oregon v Elstad, 470 US 298; People v Chapple, 38 NY2d 112,115).
The United States Supreme Court in its most recent decision involving Miranda warnings addressed the very issue before this court in Oregon v Elstad (supra).
In Elstad, defendant was arrested at his home, and after being informed that he was a suspect in the recent burglary of a neighbor’s home stated, "Yes, I was there.” Elstad was then transported to Sheriff's headquarters, and approximately one hour later was, for the first time, advised of his Miranda rights. After acknowledging that he understood his rights, Elstad waived them and subsequently "gave a full statement” explaining his complicity in the burglary. In Elstad’s subsequent prosecution for burglary, the trial court excluded from evidence Elstad’s first statement because he was not advised of his Miranda rights. However, the written statement made after proper Miranda warnings was admitted, and Elstad was convicted. The Oregon Court of Appeals reversed holding that the confession should also have been excluded due to the "coercive impact” the unconstitutionally obtained statement had on Elstad’s later written statement.
After granting certiorari to consider whether the self-incrimination clause of the 5th Amendment required suppression of the confession solely because the police had obtained an earlier voluntary but unwarned admission from the defendant, the Supreme Court addressed the issue within the background of the 4th and 5th Amendments. The Supreme Court also considered whether the prior statement given without warnings "tainted” the later one as "fruit of the poisonous tree”, and whether, so to speak, the prior had let the "cat out of the bag”, had psychologically coerced the second statement.
In its analysis of the poisonous tree argument the court stated that: "a procedural Miranda violation differs in significant respects from violations of the Fourth Amendment, which have traditionally mandated a broad application of the *684 'fruits’ doctrine. The purpose of the Fourth Amendment exclusionary rule is to deter unreasonable searches, no matter how probative their fruits * * * 'The exclusionary rule * * * when utilized to effectuate the Fourth Amendment, serves interests and policies that are distinct from those it serves under the Fifth’ * * * Where a Fourth Amendment violation 'taints’ the confession, a finding of voluntariness for the purposes of the Fifth Amendment is merely a threshold requirement in determining whether the confession may be admitted in evidence” (Oregon v Elstad, 470 US, at p —, 105 S Ct, at p 1292).
The court, speaking through Justice O’Connor, went on to say: "The Miranda exclusionary rule, however, serves the Fifth Amendment and sweeps more broadly than the Fifth Amendment itself. It may be triggered even in the absence of a Fifth Amendment violation [n omitted]. The Fifth Amendment prohibits use by the prosecution in its case in chief only of compelled testimony. Failure to administer Miranda warnings creates a presumption of compulsion. Consequently, unwarned statements that are otherwise voluntary within the meaning of the Fifth Amendment must nevertheless be excluded from evidence under Miranda” (470 US, at p —, 105 S Ct, at p 1292).
The court held that: "errors * * * made * * * in administering the * * * Miranda procedures * * * should not breed the same irremediable consequences as police infringement of the Fifth Amendment itself. It. is an unwarranted extension of Miranda to hold that a simple failure to administer the warnings, unaccompanied by any actual coercion or other circumstances calculated to undermine the suspect’s ability to exercise his free will so taints the investigatory process that a subsequent voluntary and informed waiver is ineffective for some indeterminate period. Though Miranda requires that the unwarned admission must be suppressed, the admissibility of any subsequent statement should turn in these circumstances solely on whether it is knowingly and voluntarily made” (470 US, at p —, 105 S Ct, at pp 1293-1294).
In rejecting the "cat out of the bag” theory the court held: "absent deliberately coercive or improper tactics in obtaining the initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion. A subsequent administration of Miranda warnings to a suspect who has given a voluntary but unwarned statement ordinarily should suffice to remove the conditions *685 that precluded admission of the earlier statement” (470 US, at p —, 105 S Ct, at p 1296).
Also discussed by the court and an important consideration in United States ex rel. Stephen J. B. v Shelly (430 F2d 215) was the failure to apprise defendant that the unwarned statement could not be used against him. The Supreme Court concluded that this was of no consequence.
The New York Court of Appeals rejected the "cat out of the bag” theory in People v Stephen J. B. (23 NY2d 611). In that case (supra, p 612), "defendant, a 16-year-old boy, was riding in a stolen automobile driven by another youth when they were stopped * * * for making an illegal turn.” When asked for the registration of the vehicle both youths attempted to escape. Defendant was "apprehended [by the patrolman] in the backyard of a nearby home [and] was forcibly returned to the patrol car” where the patrolman administered incomplete Miranda warnings (supra, p 612). On inquiry, defendant acknowledged that the automobile was stolen. A sergeant arrived on the scene a short time thereafter and "[w]ithout giving the fourfold Miranda warnings * * * asked defendant why he had run away from the car. Defendant replied that he believed the vehicle was stolen.” (Supra, p 612.) The sergeant "then fully advised defendant of’ the fourfold Miranda warnings (supra, p 612). Defendant after stating that "he waived his rights and would voluntarily answer questions * * * identified the driver * * * and confessed that they had stolen the car the night before.” (Supra, p 612.) After a hearing was held to determine the voluntariness of defendant’s statements, "[t]he hearing Judge suppressed the oral admissions made by defendant before he was fully” given the Miranda warnings (supra, p 613). "However, the Judge refused to suppress the later oral confession because” defendant "had been fully informed of his constitutional rights * * * and had voluntarily waived these rights” at the time he made that statement (supra, p 613). Defendant later plead guilty, and the Appellate Division unanimously affirmed.
Before the Court of Appeals (supra, p 613), defendant’s principal contention was "that, despite affirmative and intelligent waiver of his constitutional rights” after being properly advised of his Miranda warnings, his confession should have been suppressed because it was "poisoned by prior oral admissions obtained before complete Miranda warnings were given.”
*686 In rejecting the "cat out of the bag” theory, and affirming the conviction, the Court of Appeals stated: "the mere fact a defendant makes a statement to the police before he has been adequately warned of his constitutional rights does not, in itself, render inadmissible a later voluntary statement made to a police officer after complete monitions have been given.” (23 NY2d, at p 615.)
After the Court of Appeals affirmed his conviction, Stephen J. B. applied to the Federal courts for habeas corpus relief. As stated in People v Tanner (30 NY2d 102, 106):
"An interrelationship between statements was one of the grounds leading to the decision in United States ex rel. Stephen J. B. v. Shelly (430 F. 2d 215) which sustained a Federal habeas corpus order after this court had affirmed the conviction (People v. Stephen J. B., 23 N Y 2d 611). The Federal court found the admission of the petitioner * * * was not based on an intelligent waiver, and one factor, not apparently the controlling one, was the finding by the Federal court that having made a prior statement improperly elicited this let 'the cat out of the bag’ and affected his subsequent statement (430 F. 2d, p. 219).
"Other reasons, however, among them the youth and inexperience of the petitioner, affecting ability to make a meaningful waiver, entered into the grounds laid down in the decision”.
After United States ex rel. Stephen J. B. v Shelly (supra) New York courts would have had some authority to apply "the cat out of the bag” theory to statements following proper Miranda warnings where a prior statement had been made without their benefit. However, no appellate case can be found in New York directly rejecting or sanctioning the theory. Other circumstances were considered whenever the issue arose.
Now, with the United States Supreme Court’s, rejection of the "cat out of the bag” theory in Elstad (supra), the Second Circuit’s holding in Shelly (supra) as to the "cat out of the bag” theory no longer encumbers or clouds State law in this area. Consequently, without any authority in the State of New York to the contrary since Shelly, New York courts can look back to People v Stephen J. B.. (supra) where, as has been said, the Court of Appeals rejected the "cat out of the bag” theory.
The leading cases discussing this issue are People v Tanner (30 NY2d 102, supra) and People v Chapple (38 NY2d 112, *687 supra) where the issue did not have to be reached in order to make a determination.
In People v Tanner (supra), the first case in which the Court of Appeals had the opportunity to address the "cat out of the bag” issue in light of United States ex rel. Stephen J. B. v Shelly (supra), defendant testified — at the hearing to determine admissibility — that the subsequent statement was made because he was "scared.” The court held there was no basis to support a finding that the admitted "statement was 'tainted’ by the earlier ones” (30 NY2d, at p 106). The court concluded its discussion of the "cat out of the bag” issue by stating, "The court * * * need not now decide, whether on a factual finding of association between an earlier invalid admission and a later one, validly safeguarded, there must be suppression” (30 NY2d, at pp 106-107).
In the case at bar, defendant did not testify, and there is no other evidence which permits an inference that the first statement induced the second.
No discussion in this area is complete without considering People v Chapple (supra). In Chapple, which can be characterized as an "improper tactics” case (see, Oregon v Elstad, 470 US, at p —, 105 S Ct, at p 1296, 84 L ed 2d, at p 236), the Court of Appeals declared that a defendant’s statement could be suppressed, although preceded by proper Miranda warnings. In Chappie, defendant was intensively questioned without Miranda warnings, was then given these warnings, questioned further, and thereafter signed four confessions. The court concluded that defendant had been subjected to such continuous interrogation as to render the Miranda warnings administered in the midst thereof insufficient.
"The majority below affirmed Chappie’s conviction, upon his plea of guilty to one count of burglary, on the authority of People v Tanner * * * In that case we affirmed the conviction of a defendant whose testimony, directed toward the 'cat out of the bag’ theory (see United States v Bayer, 331 US 532), the lower courts found wholly incredible. The credibility of that defendant was for the lower courts to assess; we did not review their conclusions. Moreover, we refused to adopt any rule which would have the effect of automatically invalidating a confession. (See, also, People v Stephen J. B., 23 NY2d 611, 615; People v Jennings, 33 NY2d 880, affg 40 AD2d 357, 363.)
"The case before us, however, unlike Tanner, is not premised on the theory that the defendant may have made his *688 second confession on constraint of his first one. Chappie’s defense, as noted by the dissenters in the Appellate Division, is premised instead on the theory that the sequence of events, beginning with his impulsive and apparently illegal arrest and ending with the four signed confessions, was, in reality, a single continuous chain of events. Because it focused on the Tanner approach, the majority made no findings of fact with respect to the continuous chain of events in this case. We hold that, as a matter of law, such a theory may support a claim that a confession such as this one is inadmissible because not truly voluntary.” (38 NY2d, at p 114; emphasis added.)
At another point the Chappie court stated (supra, p 115):
"Warnings, to be effective under the combined holdings in Miranda and Westover [Westover v United States, 384 US 436], must precede the subjection of a defendant to questioning. Later is too late, unless there is such a definite, pronounced break in the interrogation that the defendant may be said to have returned, in effect, to the status of one who is not under the influence of questioning.
"Unlike theories which require examination of a defendant’s testimony as to his state of mind and, thus, an assessment of his credibility, the Westover approach may be based on an assessment of external events.” (Emphasis added.)
It is clear from the holdings in Elstad and Chappie, along with the facts in the instant case, defendant’s second statement may be admitted on the People’s direct case. Before Miranda warnings were administered, defendant was not subjected to intensive, in depth, or coerced interrogation. In fact, Officer B.’s sole question to defendant before the assertation of the Miranda warnings can reasonably be viewed and described as impulsive, and not as an attempt to deprive defendant of his Miranda warnings. There is nothing to indicate involuntariness in the pre-Miranda sense.
Accordingly, defendant’s motion is granted to the extent that the People will not be permitted to use defendant’s first statement in their case-in-chief and is otherwise denied.

 The legality of defendant’s arrest has been upheld after a separate hearing.