**UNITED STATES of America**

v.

**John E. MANFREDONIA, Defendant.**

**No. 68 Cr. 424.**

United States District Court,
S. D. New York.

March 31, 1972.

———◆———

Whitney North Seymour, Jr., U. S. Atty., S. D. N. Y., for the United States; John J. Kenney, Asst. U. S. Atty., of counsel.

William T. Griffin, New York City, for defendant; James J. Doyle, Peter Griffin, New York City, of counsel.

## OPINION

FRANKEL, District Judge.

Defendant was convicted by a jury on two perjury counts. On November 18, 1968, he was sentenced to a prison term of 18 months and fined $2,000 on the first count. Imposition of prison sentence was suspended on count two, defendant was fined an additional $2,000, and he was placed on probation for a period of five years, to commence after service of the prison term on count one. He surrendered for confinement on October 10, 1969, having prosecuted an unsuccessful appeal. His term, reduced by appropriate credits, expired on November 25, 1970, when he was released and his period of probation began.

The Probation Office has now charged defendant with violating the conditions of his probation in three respects:

"[1] That he has failed to obtain any type of legitimate employment.

"[2] That he has refused to submit his written monthly reports as directed.

"[3] That he has made no effort to pay his fine."

 The second of these specifications, which is critical in the court's appraisal of the problems presented, has given rise to some factual concerns hereinafter discussed.[1] For the rest, however, the facts causing the charges of probation violation are essentially undisputed. Thus, it is agreed that defendant has not obtained legitimate gainful employment. It is undisputed that his fine remains unsatisfied except for the following installments paid at the times indicated:

| | |
|---|---|
| December 23, 1968 | $ 20.00 |
| January 27, 1969 | 10.00 |
| March 27, 1969 | 20.00 |
| April 22, 1969 | 10.00 |
| May 23, 1969 | 10.00 |
| July 17, 1969 | 20.00 |
| September 3, 1969 | 10.00 |
| October 2, 1969 | 6.05 |

1. The conditions of defendant's probation, accepted and signed by him, required *inter alia* that he "report at such times and places as the Probation Officer shall direct." In a prehearing memorandum of law, the defendant's counsel mentioned as a "hypertechnicality" the suggestion that this requirement does not extend to written, signed "reports," but merely directs the probationer to "appear" at designated times and places. Thereafter, at our hearing, defense counsel made clear that, hypertechnicality or no, this contention was being pressed. The earlier characterization was more sound. In the context of the probation status and our general conditions as steadily construed over the years, the reporting requirement means precisely that the person on probation will give an account of himself, either written or oral, as well as appearing when he may reasonably be required to do so. Cf. R. Dawson, Sentencing: The Decision as to Type, Length, and Conditions of Sentence 102–04, 132–33 & n. 106 (1969); P. Tappan, Crime, Justice and Correction 567, 569–70 (1960); United States Probation Officers Manual, ch. 8, pt. 8.12 (June 4, 1971) ("Monthly Supervision Reports").

In any event, it has not been disputed, nor is it disputable, that the court "may revoke or modify any condition of probation" during the period thereof. 18 U.S.C. § 3651. Accordingly, to obviate any possible question on this score, the court on March 6, 1972, expressly ordered defendant to comply with the written report requirement that our Probation Office has demanded in his case, as in the majority of others in this District. It is now undisputed that the defendant continues to fail to meet the requirement, so that the issues hereinafter discussed are clearly and indubitably presented.

Most importantly, it is acknowledged that defendant has failed to submit required monthly reports giving such information as: name of employer, if any, nature of employment, earnings from employment, time worked, receipts from loans, welfare benefits. and other sources, overdue debts, if any, and the identity of creditors.[2]

It is defendant's failure and refusal to give information about his financial affairs that generate the relatively interesting questions now before the court. Defendant seeks to justify this omission upon a factual assertion plus an alternative ground of law. The factual contention is that having been convicted of perjury, and retaining an unshaken knowledge of his innocence, defendant now has a "deep obsession and phobia * * * that any prospective employer, or any other person, with whom he becomes connected will be harassed and his answers will be distorted and twisted and used as the framework of future charges of perjury." [3] The legal contention is that the reports in question may be withheld upon the basis of defendant's privilege against self-incrimination. The court has received evidence relating to the first of these contentions and has considered the arguments presented on both. Both are now rejected.

1. Concerning the asserted "obsession and phobia," it is appropriate to note the restricted character of this theory on defendant's own submissions. Defense counsel denies any "suggestion * * * that the phobia even approaches insanity * * *. Nor is there any basis to think that the probationer does not understand the consequences of his acts or is unable to assist in the defense of his position." [4] Thus it has appeared from the outset of

---

2. Since he was placed on probation in November 1970, defendant has filed only three of the required monthly reports. These were for December 1970, January 1971, and March 1971. In the first report, defendant gave his address and telephone number, indicated that he had not moved during the month and that he was unemployed, and signed and dated the report. In the January 1971 report, defendant again listed his address and telephone number, indicated that he had not moved, and signed and dated the paper. The March 1971 report was left blank except for defendant's signature and the date.

The report in question here is the Federal Probation and Parole Form No. 8, the "Monthly Supervision Report," which "is used for all persons under supervision." United States Probation Officers Manual, ch. 8, pt. 8.12A (June 4, 1971). This form requires the probationer to supply the following information:

"Did you move during the month?
"If you have moved, explain why
"Name and address of your employer
"What is your job?
"Have you changed jobs during the month?
"What was the total amount you earned from employment during the month?
"How many days did you work during the month?
"If you are not working, explain why
"Did you receive any money other than from employment, such as loans, relief benefits, etc.?

"If so, give amounts and from whom received
"Do you have any debts which are past due?
"If so, give amounts and to whom owed?
"Were you arrested during the Month?
"If so, give date of arrest Place of arrest
"With what offense were you charged?
"Disposition made (fine, jail, dismissed, etc.)
"Remarks, including explanation of arrests, if any."

At a hearing on March 6, 1972, defense counsel argued that the questions relating to debts past due and sources of income other than employment sought to "search a rather long stretch of the past life of the probationer." (Tr., 19.) To erase any possible ambiguity on that point, the court ruled that the questions pertained only to events since the defendant was placed on probation.

3. Memorandum of Law 5.

4. Reply Memorandum 4. The quoted statements were made in the course of opposing a government application to have defendant committed for examination in this revocation proceeding under 18 U.S.C. § 4244. Defendant's persuasive showing that the commitment should not be ordered is not confined in its utility to that purpose. It seems fair to consider it as well in defining the ultimate issues presented for decision.

the instant revocation proceeding that we were not dealing with a claim of literal mental or emotional "incapacity" to make the reports, but with an asserted resistance or "block" of imposing dimensions.

While that might conceivably have ended the subject adversely to defendant, the court heard the testimony of two psychiatrists who had conducted individual examinations of defendant. The two witnesses presented essentially similar descriptions. Defendant, both of them noted, feels that he is being followed, that government agents are out to "get" him. He sees evidence of plots and conspiracies against him in the smiles and gestures of court personnel and secretaries. His beliefs on these matters were thought by both psychiatrists to be, at least in some degree, delusional in nature. But both psychiatrists avoided labelling defendant as "psychotic," and stressed the restricted character of his disorder. Thus, defendant was variously described as suffering from a "monomania," as being in a "paranoid state," as being on the borderline between psychosis and neurosis, as having a personality disorder of a paranoid type. His "delusions," to the extent they are delusions and actually believed in, are limited to the specific area of belief in government persecution, and do not impair his ability to function in other areas of life.

On the critical issue of criminal responsibility, one of the psychiatrists said he was uncertain whether a mental disease or defect rendered defendant incapable of supplying the information requested on the monthly reports. According to the other psychiatrist, defendant understands the risks of not filing the reports and the wrongfulness of noncompliance, but is suffering from impaired judgment. In each instance, the evaluation was based solely upon an interview, of several hours duration, at which defendant supplied information about his personal history. Both psychiatrists emphasized the tentative nature of their diagnoses.

The net of the psychiatric testimony, so far as it may be thought to help defendant, is at most that certain paranoid and obsessional tendencies (not amounting to a mental disease or defect) have played a role in his refusal to report. Considering both the characterizations the doctors gave and the underlying reports from defendant upon which the characterizations were based, and setting these in the context of the record as a whole, the court finds that this defendant's "disorder" is no greater than the fears, obsessions and resistances of individuals regularly found sane and held responsible for their misdeeds. Skirting metaphysics, the court finds him capable of effective choice. His reasons for choosing not to report may well have paranoid tints. Nevertheless, he is entirely capable of making the reports in any factual sense that the law can possibly embrace. The court finds his conduct to be a knowing, volitional refusal to report, for which he must face the legal consequences.[5]

5. In the course of our hearing defense counsel indicated that defendant's failure or refusal to report might be confined to questions about sources of income other than from employment, and that he would now be willing to give negative answers to questions concerning legitimate employment or income therefrom. This revision of position casts a rather sickly light upon the psychiatric defense: it is hard for even a lay judge to envision a "paranoid state" or "monomania" so neatly tailored (or alterable) to so narrow an area of sensitivity. The psychic problem is said to center upon a paranoid fear that government people will distort reports defendant might supply. The fear of distortion, if it exists in anything like the claimed measure, would surely cover equally reports about employment and reports about other income. There are, in short, limits to the credulity with which courts may be expected to receive psycholegal constructs like that now proposed.
In any event, it is perfectly clear that the charges of violation relate to failures to answer questions on *all* the subjects mentioned earlier—employment, earnings, and the rest—and that this was also true after the court's order of March 6, 1972. Represented by able counsel, defendant had no reason to suppose he could refuse to an-

██ This does not mean defendant would stand on firmer ground now if he could be said to be "incapable" of reporting. The reports about basic activities comprise an indispensable tool for effective probation supervision. A defendant "unable" to meet such a basic requirement of probation—at least if he is otherwise competent, as this defendant is, to be sentenced—should probably be held unsuitable for that mode of correctional treatment. Cf. State v. Oyler, 92 Idaho 43, 436 P.2d 709 (1968); Sobota v. Williard, 247 Or. 151, 427 P.2d 758 (Ore. 1967) (en banc).[6]

But that is not in any event the case of our defendant. He is able to comply, but unwilling. His factual "defense" fails.

2. The claim of privilege is not more effective. It is relevant if not dispositive that the vindication of such a claim would probably spell the end of probation. Defendants are left at large rather than locked up on the understanding that they will be subjected to supervision and will cooperate in their supervision. As an alternative to an intolerable regime of surveillance approaching the quality of prison, probationers must be, and are, relied upon to supply accounts of their major activities, including their means of earning a living. See D. Dressler, Practice and Theory of Probation and Parole 242–44 (2d ed. 1969); cf. sources cited note 1 *supra*. It is unlikely that Congress would continue to authorize, or that sentencing judges would remain as ready to employ, the alternative of probation if the reporting requirement were held unconstitutional.

██ There are, however, simpler grounds of law refuting defendant's thesis. To begin with, since our concern is with a sentenced defendant—not actually in custody, but intended to be deprived of full freedom in a variety of fundamental respects [7]—we know that at least some constitutional rights are inevitably limited or withdrawn from such a person during the service of his sentence. The principle, if not the details of application, is essentially the same for a prisoner as for a probationer. Putting it in the enlightened form of its contemporary dimensions, the controlling doc-

swer all questions because of privilege as to some. Finally, of course, the decision announced herein is not basically affected by the number of unanswered questions. The claims of privilege and psychosis are not altered by that, and the rejection of the claims rests upon unchanged grounds.

6. Few cases have been found which discuss whether or when a psychological incapacity to comply with a probation condition may render an individual ineligible for probation. Those cited above deal with the problem of requiring, as a condition of probation, that a chronic alcoholic refrain from the use of alcoholic beverages—e. g., where the underlying offense is for driving while intoxicated. They support the general proposition, applicable in the instant case, that the court should consider whether compliance with the condition in question is "fundamental to a proper probation." State v. Oyler, *supra*, 436 P.2d at 713. See generally State v. Moretti, 50 N.J.Super. 223, 141 A.2d 810, 823–826 (N.J.Super.Ct.1958). It is clear that the sentencing court need not leave a dangerous driver on the high-

ways when it becomes apparent that it is "impossible" for him to avoid the vice rendering him dangerous. On comparable principle, since the program includes supervision and reports as central to the hope for rehabilitation, the probationer who cannot help making supervision unmanageable may fairly be found unfitted for the program.

7. The deprivation is real and substantial enough to render habeas corpus a proper avenue of relief for a party claiming invalidity of his sentence to probation. United States ex rel. B. v. Shelly, 430 F.2d 215, 218 n. 3 (2d Cir. 1970); Hahn v. Burke, 430 F.2d 100, 102 (7th Cir. 1970), cert. denied, 402 U.S. 933, 91 S.Ct. 1522, 28 L.Ed.2d 868 (1971); Benson v. California, 328 F.2d 159, 162 (9th Cir. 1964); Richards v. Townsend, 303 F.Supp. 793, 794 (N.D.Cal.1969); Petition of Engle, 218 F.Supp. 251, 252 (S. D.Ohio 1963), aff'd, 332 F.2d 88 (6th Cir.), cert. denied, 379 U.S. 903, 85 S.Ct. 192, 13 L.Ed.2d 176 (1964); cf. Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963).

trine here is that a probationer (like a prisoner, parolee or mandatory releasee) "retains all the rights of an ordinary citizen except those expressly, or by necessary implication, taken from him by law." Coffin v. Reichard, 143 F.2d 443, 445 (6th Cir. 1944), cert. denied, 325 U.S. 887, 65 S.Ct. 1568, 89 L.Ed. 2001 (1945). Rights like the freedom to speak, Nolan v. Fitzpatrick, 451 F.2d 545 (1st Cir. 1971) (prisoners); Sobell v. Reed, 327 F.Supp. 1294 (S.D.N.Y. 1971) (parolees), to pursue legal remedies, Corby v. Convoy, 457 F.2d 251 (2d Cir. 1972) (prisoners), to have counsel, Gunsolus v. Gagnon, 454 F.2d 416 (7th Cir. 1971) (parolees); People ex rel. Menechino v. Warden, 27 N.Y.2d 376, 318 N.Y.S.2d 449, 267 N.E.2d 238 (1971) (Fuld, C. J.) (parolees), and, generally, to the due process of law, Hyser v. Reed, 115 U.S.App.D.C. 254, 318 F.2d 225 (D.C. Cir.), cert. denied sub nom. Thompson v. United States Bd. of Parole, 375 U.S. 957, 84 S.Ct. 446, 11 L.Ed.2d 315 (1963), are largely or wholly unimpaired. But the right of privacy must be, at least in some substantial degree, cut down for one who is, "in fact, as well as in theory," under the "custody and control" of the law. Jones v. Cunningham, 371 U.S. 236, 242, 83 S.Ct. 373, 376, 9 L.Ed.2d 285 (1963).[8] The requirement to report, to account, is centrally and necessarily implied in the probationer's status. It may not be avoided by the claim of a privilege which must be held unavailable because it is fundamentally inconsistent with the acquisition and maintenance of the probationary status.

█ It is concluded, in sum, that defendant has violated the conditions of probation. The petition for revocation is, accordingly, granted.[9] The sentence, imposition of which was heretofore suspended, will be imposed at 10 a. m. on April 7, 1972.

It is so ordered.

---

8. The language quoted is from a case in which the Supreme Court held that a parolee was "in custody" for purposes of federal habeas. The Court's holding is equally applicable to the situation of a probationer. See United States ex rel. B. v. Shelly, *supra*, 430 F.2d at 218 n. 3: there is "no reason or authority which would distinguish probation from parole in habeas corpus applications."

9. Having found a violation in the failure to report, the court need not determine whether failure to work or failure to pay the fine would warrant or require revocation. As to the latter, the Government has other remedies not sought in the present proceeding.