**UNITED STATES of America, Appellee,**

v.

**Theodore Lawrence BROWN,**
**Defendant–Appellant.**

**No. 563, Docket 89–1377.**

United States Court of Appeals,
Second Circuit.

Argued Dec. 4, 1989.

Decided March 27, 1990.

Geoffrey W. Crawford (O'Neill and Crawford, Burlington, Vt., on the brief), for defendant-appellant.

Charles A. Caruso, Asst. U.S. Atty., Rutland, Vt. (George J. Terwilliger, III, U.S. Atty., John–Claude Charbonneau, Asst. U.S. Atty., on the brief), for appellee.

Before NEWMAN and WINTER, Circuit Judges, and TENNEY, District Judge.*

JON O. NEWMAN, Circuit Judge:

The issue on this appeal is whether insanity is a defense to a violation of probation. Theodore Lawrence Brown, a federal prisoner, appeals from a July 25, 1989, order of the District Court for the District of Vermont (Albert W. Coffrin, Judge) revoking his probation after Brown admitted to violating two of its conditions. At the revocation hearing, the District Court prohibited Brown from raising the defense of insanity, though the Court allowed him to present expert psychiatric testimony on the issue of sentencing. After reviewing this evidence, the Court revoked probation and sentenced Brown to the custody of the Attorney General of the United States for a period of five years.

Brown challenges the revocation on several grounds. First, he argues that the District Court violated his right to the insanity defense established by 18 U.S.C. § 17 (1988), which he contends applies to revocation proceedings. Second, he asserts that even if the federal insanity defense statute does not apply by its own terms to revocation proceedings, the defense recognized by the statute should nevertheless be applied to these proceedings. Third, Brown extracts from *Bearden v. Georgia*, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983), a constitutional limitation on the power of courts to revoke probation where its conditions are violated by an individual who lacks the capacity to appreciate the wrongfulness of his conduct. We disagree with each of Brown's contentions and affirm the order of the District Court.

### Background

In 1983, Brown was indicted on charges of cultivating marijuana, in violation of 21 U.S.C. §§ 812, 841, and 846 (1988). On March 18, 1985, as a result of Brown's guilty plea to one count of that indictment, the District Court imposed a term of imprisonment of five years, suspended execution of the sentence, and placed Brown on probation for five years. On September 15, 1986, the Government filed the first of three petitions for revocation. This petition charged Brown with possession of marijuana and firearms in violation of the terms of his probation. At a revocation hearing on October 8, 1986, the District Court found that Brown had violated his probation but nevertheless ordered probation continued under the original conditions. The Court warned Brown that "this may well be his last chan[c]e to make appropriate adjustments to the conditions of his probation and should he be in further violation of said conditions there is a good likelihood a substantial period of incarceration may ensue." On July 23, 1987, the Government filed a second petition for revocation after Brown was convicted in state court for obstruction of justice. Slightly

* The Honorable Charles H. Tenney of the District Court for the Southern District of New York, sitting by designation.

more than a year later, for reasons that are unclear from the record, the Probation Office withdrew this petition. The Government filed a third petition for revocation on August 25, 1988. This petition initially stated three grounds for revocation: unlawful possession of firearms, possession of cocaine in the District of New Jersey, and absence from the District of Vermont without permission. Later, this petition was amended to include an additional charge: possession of cocaine in the District of Vermont. At a preliminary hearing the District Court found probable cause that Brown had violated the terms of his probation and ordered him detained pending a final hearing.

Brown then gave notice of his intent to rely on the defense of insanity at the time of the acts alleged to have violated the conditions of probation. *Cf.* Fed.R.Crim.P. 12.2 (notice of insanity defense prior to trial of criminal charges). The Government moved to strike this notice, and, upon the recommendation of a magistrate, the District Court granted the Government's motion in an order dated July 13, 1989. Observing that revocation was not part of a criminal prosecution, the District Court ruled that the pertinent inquiry in a revocation proceeding was only whether the probationer had breached the conditions as a matter of fact.

At the final hearing on July 25, 1989, Brown admitted to two of the four grounds in the Government's petition: possession of ten ounces of cocaine, with intent to distribute, in the District of Vermont and absence from the District without permission. Following these admissions, the District Court found that Brown had violated the conditions of his probation and moved to the second phase of the hearing, the determination of whether to continue probation or impose a sentence. At that point, Brown presented evidence in support of the continuation of probation, including evidence that he was mentally incompetent when the violations occurred. An expert psychologist, Dr. Richard Musty, testified that Brown suffered from a cocaine psychosis at the time of his probation violations. This testimony was confirmed to some degree by Dr.

Kathleen Stern, a psychiatrist who had examined Brown in an unrelated state court proceeding a year earlier and had diagnosed him as a chronic paranoid schizophrenic. The Government challenged this evidence. In a written report Dr. John Ives, a psychiatrist, testified that, though Brown's behavior resembled a "mixed personality disorder with paranoid and antisocial features," he in fact suffered from neither a cocaine psychosis nor a paranoid schizophrenia. At the conclusion of the hearing, the District Court revoked Brown's probation and sentenced him to the custody of the Attorney General for a period of five years.

### Discussion

■ 1. We turn first to Brown's argument that the federal insanity defense statute, codified at 18 U.S.C. § 17, applies in probation revocation proceedings. Section 17(a) of that statute establishes a uniform standard for the insanity defense in all federal prosecutions:

> It is an affirmative defense to a prosecution under any Federal statute that, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts. Mental disease or defect does not otherwise constitute a defense.

Brown contends that the statutory phrase "prosecution under any Federal statute" encompasses revocation proceedings because he was threatened with a loss of liberty under 18 U.S.C. § 3565(a) (1988), the statutory provision authorizing a court to modify or revoke probation after finding a violation of its conditions. Brown attempts to draw support for his interpretation from the absence of any legislative history indicating an intent to exclude probation revocation hearings from the scope of section 17.

We find Brown's reasoning unpersuasive. Prior to the enactment of the federal insanity defense statute in 1984, the Supreme Court expressly rejected the characterization of a revocation proceeding as a

criminal prosecution. *See Gagnon v. Scarpelli*, 411 U.S. 778, 782, 93 S.Ct. 1756, 1759, 36 L.Ed.2d 656 (1973); *see also Morrissey v. Brewer*, 408 U.S. 471, 480, 92 S.Ct. 2593, 2599, 33 L.Ed.2d 484 (1972) (parole revocation proceeding not part of criminal prosecution). In *Gagnon v. Scarpelli*, the Court distinguished revocation proceedings from criminal prosecutions on the ground that a probationer already stands convicted of a crime, even though both proceedings may result in a loss of liberty. *Id.* at 782, 93 S.Ct. at 1759. For this reason the Supreme Court has declined to attach to revocation proceedings "the full panoply of procedural safeguards associated with a criminal trial." *Black v. Romano*, 471 U.S. 606, 613, 105 S.Ct. 2254, 2258, 85 L.Ed.2d 636 (1985). For example, while a criminal conviction requires proof beyond a reasonable doubt, revocation requires only proof to satisfy the court "that the probationer has abused the opportunity granted him not to be incarcerated." *Roberson v. Connecticut*, 501 F.2d 305, 308 (2d Cir.1974); *United States v. Nagelberg*, 413 F.2d 708, 709 (2d Cir.1969), *cert. denied*, 396 U.S. 1010, 90 S.Ct. 569, 24 L.Ed.2d 502 (1970); *see also Knight v. Estelle*, 501 F.2d 963, 964 n. 3 (5th Cir.1974) (adopting preponderance of the evidence standard for revocation proceedings), *cert. denied*, 421 U.S. 1000, 95 S.Ct. 2399, 44 L.Ed.2d 668 (1975). We believe that Congress did not mean to include revocation proceedings within the phrase "prosecutions under any federal statute."

■ 2. Brown next argues that even if section 17 by its own force does not extend the insanity defense to revocation proceedings, this Court should nevertheless adopt that section's test of criminal responsibility as the standard for the revocation of probation. Though it is unclear by what authority Brown would have this Court establish a threshold level of criminal responsibility in revocation proceedings, he is presumably asking that we read this requirement into the statute governing probation revocation, 18 U.S.C. § 3565 (1988).

This claim raises a novel issue in this Circuit. In *United States v. Mercado*, 469 F.2d 1148 (2d Cir.1972), we expressly declined to decide whether a lack of criminal responsibility in violating the terms of probation constituted a defense to revocation. *Id.* at 1152. In that case, we held that because the overwhelming evidence in the record tended to demonstrate that the probationer was mentally incompetent, the District Court could not rest probation revocation on the ground that the probationer was responsible for his violations. *Id.* at 1153. We required the Government, *if* it sought to justify revocation on this ground, to present sufficient evidence rebutting the probationer's showing of insanity at the time of the violations. *But see United States v. O'Sullivan*, 421 F.Supp. 300, 302 (S.D.N.Y.1976) (criminal responsibility not a prerequisite to the revocation of probation).

In support of his claim that revocation should require a modicum of criminal responsibility, Brown points out that the definition of insanity in section 17 is substantially more restrictive that the definition previously adopted by this Court. *See United States v. Freeman*, 357 F.2d 606 (2d Cir.1966). Under the insanity defense applicable prior to the passage of the federal statute, it was a defense if the defendant "lack[ed] substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law." *Id.* at 622. This formulation followed the standard of criminal responsibility outlined in section 4.01 of the Model Penal Code, which established, in addition to a "cognitive" test of criminal responsibility, a "control" test to determine an individual's ability to conform his behavior to legal requirements. The federal insanity defense statute recognizes only a "cognitive" test—the defendant must demonstrate that he "was unable to appreciate the nature and quality or the wrongfulness of his acts."

We appreciate that the insanity defense as set forth in section 17 is more restrictive than the defense previously recognized by this Court. But the fact that Congress chose a narrower definition of insanity provides no basis for adopting the minimal level of criminal responsibility implied by the statute as a prerequisite to probation

revocation. In many revocation hearings, it is irrelevant whether a probationer can be held criminally responsible for his conduct. Because many of the routinely imposed conditions of probation do not, if violated, constitute criminal offenses, a judge considering probation revocation often has no occasion to determine criminality or offense elements such as criminal intent. *See United States v. O'Sullivan,* 421 F.Supp. at 302. Moreover, the fact that the probationer violated a condition may be sufficient proof that probation is not serving the purpose for which it was granted. *See United States v. Manfredonia,* 341 F.Supp. 790, 794 (S.D.N.Y.), *aff'd,* 459 F.2d 1392 (2d Cir.), *cert. denied,* 409 U.S. 851, 93 S.Ct. 61, 34 L.Ed.2d 93 (1972). For example, the probationer who fails to keep his probation officer informed of his residence may be found no longer to merit probation, whether his omission results from willfulness, carelessness, or impaired mental capacity. Especially where the violation reveals the probationer to be a threat to society, a court may determine that other means of rehabilitation are preferable.[1] *See Burns v. United States,* 287 U.S. 216, 221, 53 S.Ct. 154, 156, 77 L.Ed. 266 (1932). And though a probation violation may result in incarceration or some other form of punishment, this punishment is imposed not for the violation itself but for the prior criminal offense for which the probationer was convicted. We therefore find no justification for establishing a minimum standard of criminal responsibility in revocation proceedings.

3. Finally, Brown challenges the District Court's rejection of his assertion of the insanity defense on constitutional grounds. Specifically, he contends that *Bearden v. Georgia,* 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983), prohibits revocation when the probation violation was not voluntary or willful. In *Bearden,* the Supreme Court ruled that the constitutional guarantee of due process prohibited states from automatically revoking probation when an indigent person failed to pay a fine or make restitution. *Id.* at 667, 103 S.Ct. at 2069. Contending that mental illness is as involuntary a condition as poverty, Brown asserts that the District Court's rejection of his insanity defense impermissibly removed all consideration of fault from its decision to revoke probation.

■■■ We agree with Brown's premise that probation revocation raises important constitutional concerns. Though a revocation hearing is not part of a criminal prosecution, the loss of liberty entailed in revocation is a deprivation worthy of some due process protection. *See Gagnon v. Scarpelli,* 411 U.S. at 781, 93 S.Ct. at 1759. Because the probationer has an obvious interest in maintaining his conditional liberty against an unjustified deprivation, the Supreme Court has imposed certain procedural limits on revocation. *See Bearden v. Georgia,* 461 U.S. at 666 n. 7, 103 S.Ct. at 2069 n. 7. Foremost among these is the right to a hearing at which the court determines two issues: whether the probationer violated a condition of probation as a matter of fact and, if so, whether this fact warrants revocation.[2] *See Black v. Roma-*

1. Brown argues that the federal insanity defense statute already balances the competing interests of the public and the defendant. He observes that the passage of section 17 was accompanied by a mandatory civil commitment provision, 18 U.S.C. § 4243 (1988), which provides for the indefinite commitment of dangerous persons after their acquittal by reason of insanity. Focusing on the public safety presumably secured by mandatory civil commitment, Brown contends that a sentencing judge no longer has any need to exclude an individual's mental condition from the determination of whether probation should be revoked. We disagree. Brown's argument implies that prior to the passage of the civil commitment provision, a court was prohibited from taking account of a probationer's

mental condition in determining what measures to take to rehabilitate the probationer. This implication is mistaken. The statutory provision governing revocation proceedings expressly permits a court to order a probationer to undergo psychiatric treatment in a specified mental hospital. *See* 18 U.S.C. § 3563(b)(10) (1988).

2. In addition, as a matter of due process, the probationer is entitled to written notice of the claimed violations of his probation; disclosure of the evidence against him; an opportunity to be heard in person and to present witnesses and documentary evidence; a neutral hearing body; and a written statement by the fact-finder as to the evidence relied on and the reasons for revoking probation. *Gagnon,* 411 U.S. at 786, 93

*no,* 471 U.S. at 611, 105 S.Ct. at 2257; *Gagnon v. Scarpelli,* 411 U.S. at 786, 93 S.Ct. at 1761; *see also* Fed.R.Crim.P. 32.-1(a) advisory committee note. The voluntariness of a probationer's violation becomes a pertinent issue only at the second phase of this two-step inquiry. At the preliminary, fact-finding stage, a determination that probation was violated alerts the court to the possibility that the probationer is either unable or unwilling to obey the conditions and that probation may not be a suitable mode of correctional treatment. *See United States v. Manfredonia,* 341 F.Supp. at 794. At the latter stage, an inquiry into the voluntariness of the violation permits the court to make the appropriate disposition in light of the needs to rehabilitate the probationer and to protect society. Though the Supreme Court has not required sentencing courts to consider alternatives to incarceration upon a finding of probation violation, *see Black v. Romano,* 471 U.S. at 612, 105 S.Ct. at 2258, courts typically have discretion either to modify the conditions of probation, 18 U.S.C. § 3565(a)(1), or to impose a punishment less severe than incarceration, *id.* § 3565(a)(2).[3] Where such discretion exists, the probationer is entitled to an opportunity to demonstrate that there was a justifiable excuse for any violation that occurred or that societal interests, like community safety, do not require revocation. *Black v. Romano,* 471 U.S. at 612–13, 105 S.Ct. at 2258. Lack of volition, while not a defense to revocation, *see United States v. Warner,* 830 F.2d 651, 657 (7th Cir.1987), is often a factor pertinent to the disposition of a revocation proceeding.

In addition to these procedural due process requirements, *Bearden v. Georgia, supra,* has established a substantive limitation on the revocation of probation. In *Bearden,* the Supreme Court held that where a fine or restitution is imposed as a condition of probation, and "the probationer has made all reasonable efforts to pay ... yet cannot do so through no fault of his own, it is fundamentally unfair to revoke probation automatically without considering whether adequate alternative methods of punishing the defendant are available." 461 U.S. at 668–69, 103 S.Ct. at 2070–71. Contrary to Brown's assertions, however, *Bearden* does not prohibit revocation whenever the violation was involuntary. The Supreme Court expressly refrained from announcing such a broad rule: "We do not suggest that, in other contexts, the probationer's lack of fault in violating a term of probation would necessarily prevent a court from revoking probation." *Id.* at 668 n. 9, 103 S.Ct. at 2070 n. 9. Even in the context of indigence, *Bearden* was careful not to prohibit a court from revoking probation for a failure to make restitution despite bona fide efforts to do so. In those instances, the Supreme Court required the sentencing court initially to consider other means of punishment and permitted incarceration only if those alternative measures proved inadequate to meet the state's interest in punishment and deterrence. *Id.* at 672, 103 S.Ct. at 2072.

■ In this case, the decision to revoke Brown's probation satisfied the requirements of due process. The Government afforded Brown a preliminary hearing, at which the Government demonstrated probable cause that Brown had violated his probation, as well as a final revocation hearing, during which Brown was given a full opportunity to present mitigating factors to the sentencing judge. Though the District Court properly refused to consider insanity as a defense, the Court did hear evidence as to Brown's mental condition in determining whether to revoke his probation. Brown presented an expert wit-

S.Ct. at 1761; *Black v. Romano,* 471 U.S. at 612, 105 S.Ct. at 2258. Furthermore, in some circumstances, the probationer is also entitled to cross-examine witnesses and to have the assistance of counsel. *Id.* at 790.

**3.** In certain instances, once a court determines that probation has been violated, it must revoke probation and sentence the probationer to at least a fraction of the original sentence. *See* 18 U.S.C. § 3565(a) (mandatory revocation of probation and imposition of at least one-third of the original sentence for possession of a controlled substance); *id.* § 3565(b) (mandatory revocation of probation for possession of firearm).

ness who testified that Brown labored under a cocaine psychosis during the time of his probation violations. This expert also urged the Court not to revoke Brown's probation, but instead to modify its terms so that Brown could enter a treatment facility. For its part, the Government offered the written report of a psychiatrist who challenged the diagnosis that Brown suffered from a cocaine psychosis or a paranoid schizophrenia.

In hearing this testimony, the District Judge evidently sought to take account of the wide range of factors underlying the determination of whether to continue, modify, or revoke Brown's probation. However, since Brown admitted the possession of a controlled substance, federal law required the District Court to revoke probation and impose at least one-third of the original sentence. 18 U.S.C. § 3565(a). We need not decide today whether concerns for fundamental fairness preclude the automatic revocation of probation in this circumstance. Brown does not challenge the constitutionality of section 3565(a), and the District Judge gave no indication that he wished to continue Brown's probation but was prohibited from doing so because of this provision. Based on the available evidence, it was reasonable for the District Court to conclude that Brown was no longer a good rehabilitative risk and that the public's interests were best served by revocation. The decision to sentence Brown to the custody of the Attorney General for a period of five years, which is longer than the minimum term of incarceration required by the application of section 3565(a), was well within the District Court's discretion. We note that should Brown believe that he continues to suffer from a mental defect or disease, he may petition the Government to move for a hearing to determine the state of his present mental condition and to ascertain whether he should be transferred to a suitable treatment facility. *See id.* § 4245(a).

The order of the District Court is affirmed.