In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00123-CR


______________________________




RAYMOND BERRYHILL, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 202nd Judicial District Court


Bowie County, Texas


Trial Court No. 01-F-0240-202




 




Before Morriss, C.J., Ross and Carter, JJ.


Memorandum Opinion by Justice Ross



MEMORANDUM OPINION



 Raymond Berryhill has filed a motion seeking to withdraw his notice of appeal. 
Pursuant to Tex. R. App. P. 42.2(a), his motion is granted.

 We dismiss the appeal.


 Donald R. Ross

 Justice


Date Submitted: May 13, 2003

Date Decided: May 14, 2003


Do Not Publish



">
Armstrong was properly admonished both orally and in writing, he responded to all of the\
court\'s questions, stated he understood the admonishments and the consequences of his plea, and\
even asked questions for clarification. \
'

var WPFootnote5 = '
In reviewing these conflicting opinions, it is worth noting the time frame within which each\
expert evaluated Armstrong relative to the time of the offense and plea. The State\'s expert evaluated\
Armstrong on December 21, 2001, the day after the grand jury indicted him and six days before he\
pled  guilty  and  the  trial  court  rendered  judgment;  Armstrong\'s  expert  evaluated  Armstrong\
on May 9, 2002. \
'

function WPShow( WPid, WPtext )
{
 if( bInlineFloats )
 eval( "document.all." + WPid + ".style.visibility = 'visible'" );
 else
 {
 if( floatwnd == 0 || floatwnd.closed )
 floatwnd = window.open( "", "comment", "toolbars=0,width=600,height=200,resizable=1,scrollbars=1,dependent=1" );
 floatwnd.document.open( "text/html", "replace" );
 floatwnd.document.write( "
\r\n" );
 floatwnd.document.write( "\r\n" );
 floatwnd.document.write( "
\r\n" );
 floatwnd.document.write( WPtext );
 floatwnd.document.write( '
Close');
 floatwnd.document.write( "
" );
 floatwnd.document.close();
 floatwnd.focus();
 }
}

function WPHide( WPid )
{
 if( bInlineFloats )
 eval( "document.all." + WPid + ".style.visibility = 'hidden'" );
}



















In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00083-CR
______________________________


WESLEY CARL ARMSTRONG, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the Sixth Judicial District Court
Lamar County, Texas
Trial Court No. 18809


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Chief Justice Morriss


O P I N I O N

            Wesley Carl Armstrong asks us to reverse the revocation of his community supervision



principally because of his asserted lack of mental capacity. In eight points of error, Armstrong
contends (1) the trial court abused its discretion by revoking community supervision because the
affirmative defense of insanity was proved by a preponderance of the evidence; (2) the trial court
violated his due process rights and abused its discretion by revoking community supervision for
failure to pay various fees, court costs, fines, and restitution because he did not have the ability to
pay, and the State did not prove that the failure to pay was intentional; (3) the trial court violated his
due process rights and abused its discretion by revoking community supervision because the terms
of supervision with respect to the report date and treatment requirements were vague or ambiguous;
and (4) the conviction for which he was placed on community supervision should be set aside
because he was insane at the time the original offense was committed or incompetent at the time he
pled guilty. We affirm.
Standard of Review
            The decision whether to revoke community supervision rests within the discretion of the trial
court.  Cardona  v.  State,  665  S.W.2d  492,  493  (Tex.  Crim.  App.  1984);  In  re  T.R.S.,  115
S.W.3d 318, 320 (Tex. App.—Texarkana 2003, no pet.). As the sole trier of fact, the trial court
determines the credibility of the witnesses, accepting or rejecting any or all of the witnesses'
testimony. T.R.S., 115 S.W.3d at 321 (citing Mattias v. State, 731 S.W.2d 936, 940 (Tex. Crim.
App. 1987); Jones v. State, 787 S.W.2d 96, 97 (Tex. App.—Houston [1st Dist.] 1990, pet. ref'd)). 
The court's discretion, however, is not absolute and does not authorize the revocation of community
supervision without evidence of a violation of one of the conditions imposed. T.R.S., 115 S.W.3d
at 320 (citing DeGay v. State, 741 S.W.2d 445, 449 (Tex. Crim. App. 1987); Scamardo v. State, 517
S.W.2d 293, 297 (Tex. Crim. App. 1974)). That is, the State must prove, by a preponderance of the
evidence, that the conditions of supervision were violated. Cobb v. State, 851 S.W.2d 871, 873
(Tex. Crim. App. 1993); Cardona, 665 S.W.2d at 493. "This standard is met," and revocation should
be affirmed, "when the greater weight of the credible evidence creates a reasonable belief the
defendant violated a condition of his or her [community supervision] as . . . alleged." T.R.S., 115
S.W.3d at 321 (citing Martin v. State, 623 S.W.2d 391, 393 n.5 (Tex. Crim. App. 1981); Allbright
v. State, 13 S.W.3d 817, 819 (Tex. App.—Fort Worth 2000, pet. ref'd); Stevens v. State, 900 S.W.2d
348, 351 (Tex. App.—Texarkana 1995, pet. ref'd)).
Insanity Defense
            In his first point of error, Armstrong contends the trial court abused its discretion by revoking
community supervision because he proved the affirmative defense of insanity by a preponderance
of the evidence. He argues that, because he was insane and unable to make reasonable decisions,
he should not be held responsible for failing to comply with the requirements of community 
 
supervision. The defense of insanity, however, has not been recognized in Texas as generally
available in revocation proceedings.



            In support of the argument that he is entitled to mount an insanity defense at a revocation
hearing, Armstrong relies on Section 8.01 of the Texas Penal Code and Casey v. State, 519 S.W.2d
859 (Tex. Crim. App. 1975). See Tex. Pen. Code Ann. § 8.01 (Vernon 2003). Although the Casey
court did entertain an appellant's argument that he established the affirmative defense of insanity,
Casey does not apply to this case because, unlike the present case, the State applied to revoke Casey's
community supervision only because he allegedly committed a new criminal offense. Id. at 860–61. 
Here, the State alleges Armstrong violated the terms of his community supervision with only
noncriminal violations, including (1) failure to report; (2) failure to pay court costs, fees, and
restitution; and (3) failure to comply with all treatment recommended by the Texas Department of
Mental Health and Mental Retardation. 
            Although no Texas cases directly address the availability of an insanity defense at a
revocation hearing, the Texas Court of Criminal Appeals has stated that, during a proceeding to
revoke community supervision, "a defendant need not be afforded the full range of constitutional and
statutory protections available at a criminal trial." Davenport v. State, 574 S.W.2d 73, 75 (Tex.
Crim. App. 1978) (citing Gagnon v. Scarpelli, 411 U.S. 778 (1973)). "At such a proceeding, guilt
or innocence is not at issue, and the trial court is not concerned with determining the defendant's
original criminal culpability. 'The question at a revocation hearing is whether the appellant broke
the contract he made with the court after the determination of his guilt.'" Davenport, 574 S.W.2d
at 75 (quoting Kelly v. State, 483 S.W.2d 467, 469 (Tex. Crim. App. 1972) ("It should be
remembered that a defendant is not entitled to probation as a matter of right; granting probation is
entirely within the trial court's discretion.")).
            Federal courts that have addressed the issue have determined the insanity defense is not
available in revocation proceedings. In United States v. Brown, 899 F.2d 189 (2d Cir. 1990), for
example, the Second Circuit Court of Appeals took a position similar to the position taken in
Davenport, noting that revocation proceedings are distinguished from criminal prosecutions because
the probationer already stands convicted of a crime and is, for that reason, not afforded "the full
panoply of procedural safeguards associated with a criminal trial." Id. at 192 (quoting Black v.
Romano, 471 U.S. 606, 613 (1985)).
In many revocation hearings, it is irrelevant whether a probationer can be held
criminally responsible for his conduct. Because many of the routinely imposed
conditions of probation do not, if violated, constitute criminal offenses, a judge
considering probation revocation often has no occasion to determine criminality or
offense elements such as criminal intent. Moreover, the fact that the probationer
violated a condition may be sufficient proof that probation is not serving the purpose
for which it was granted. For example, the probationer who fails to keep his
probation officer informed of his residence may be found no longer to merit
probation, whether his omission results from willfulness, carelessness, or impaired
mental capacity.

Id. at 193 (citations omitted and emphasis added). The State's motion to revoke community
supervision did not allege Armstrong committed a criminal offense for which the insanity defense
was available, but alleged noncriminal violations only. For this reason, we overrule this point of
error because it is irrelevant whether Armstrong could be held criminally responsible for his conduct
in violating the terms of his community supervision.
            Even if an insanity defense could be viable for noncriminal violations, Armstrong's point of
error would fail. On this record, we could not conclude the trial court abused its discretion in
revoking Armstrong's community supervision. There is conflicting expert testimony in the record,
and the fact-finder is entitled to disbelieve a witness.
[A] few of the many obstacles faced by an accused in relying upon the defense of
insanity in a revocation hearing [include]:
 
1. Such a defense must be established by the appellant by a preponderance of the
evidence; and, he is presumed to be sane. Casey v. State, 519 S.W.2d 859, 861
(Tex.Cr.App.1975).
 
2. It is not necessary for the State to present expert medical evidence that a defendant
is sane to refute defense experts. Graham v. State, 566 S.W.2d 941, 950
(Tex.Cr.App.1978).
 
. . . .
 
4. The State need establish the violation only by a preponderance of the evidence.
Scamardo v. State, 517 S.W.2d 293, 297-298 (Tex.Cr.App.1974). n3
 
5. The only question legitimately before this appellate court in the review of the
probation revocation is whether or not the trial court abused its discretion. Isabell
v. State, 494 S.W.2d 572, 573-574 (Tex.Cr.App.1973).
 
6. The trial judge is the sole trier of the facts, the credibility of the witnesses and the
weight to be given to the testimony. Diaz v. State, 516 S.W.2d 154, 156
(Tex.Cr.App.1974).
Jackson v. State, 628 S.W.2d 120, 121–22 (Tex. App.—Beaumont 1981, no pet.) (footnotes
omitted).
Inability to Pay
            In his second and third points of error, Armstrong argues that, because he was unable to pay
and the State did not prove that the failure to pay was intentional, the trial court violated his due
process rights and abused its discretion by revoking community supervision for failure to pay various
fees, court costs, fines, and restitution. Both the record and Armstrong's own brief, however,
indicate that the affirmative defense of inability to pay was never presented to the trial court. 
Instead, Armstrong argues the failure to pay could not have been intentional in light of expert
testimony indicating he was incompetent and incapable of making rational decisions. Nevertheless,
the State's evidence reasonably supports the conclusion that Armstrong understood the terms of
community supervision at the time of the hearing, but failed to meet his financial obligations by
consciously choosing to stop taking his medications and to remain at home rather than seek
employment.


 Because the trial court could easily have inferred from these facts that Armstrong's
failure to pay was intentional, we cannot conclude the court abused its discretion.
Vague or Ambiguous Requirements
            In his fourth, fifth, and sixth points of error, Armstrong contends the trial court violated his
due process rights and abused its discretion in revoking community supervision because the terms
of supervision addressing the report date and treatment requirements were vague or ambiguous. In
order to object to the terms of community supervision, however, a defendant must complain at trial
to the conditions he or she finds objectionable. Rickels v. State, 108 S.W.3d 900, 902 (Tex. Crim.
App. 2003). By failing to so complain, a defendant affirmatively waives any objections he or she
may have had. Id. Armstrong not only failed to object to the terms of community supervision as
vague or ambiguous, but also stated to the court that he understood he was to report weekly for
treatment and that he would take any medications prescribed during the course of treatment. 
Mental Capacity for Underlying Conviction
            In his seventh and eighth points of error, Armstrong contends the underlying conviction—for
which he was originally placed on community supervision—should be set aside because he was
insane at the time the offense was committed or incompetent at the time he pled guilty. Ordinarily,
the validity of the original conviction from which no appeal is taken cannot be raised on appeal from
a revocation order. Whetstone v. State, 786 S.W.2d 361, 363 (Tex. Crim. App. 1990). The Texas
Court of Criminal Appeals has observed that "a defendant placed on 'regular' community supervision
may raise issues relating to the conviction . . . only in appeals taken when community supervision
is originally imposed." Manuel v. State, 994 S.W.2d 658, 661 (Tex. Crim. App. 1999). Armstrong
neither filed a motion for new trial nor appealed his original conviction. Citing Perkins v. State, 504
S.W.2d 458 (Tex. Crim. App. 1974), overruled on other grounds, Ex parte Taylor, 522 S.W.2d 479
(Tex. Crim. App. 1975), however, Armstrong argues that whether a guilty plea was made knowingly
and voluntarily may be raised at a hearing on a motion to revoke community supervision and that
his conviction should be set aside because he was neither sane when he committed the original
offense nor competent when he entered his plea. While a guilty plea must be freely, voluntarily, and
knowingly made, Ex parte Evans, 690 S.W.2d 274, 276 (Tex. Crim. App. 1985), assuring that a
defendant pleading guilty to a criminal offense does so with full understanding of the charges and
the consequences of his or her plea, Basham v. State, 608 S.W.2d 677, 678 (Tex. Crim. App. 1980),
the voluntariness of the plea is presumed once the trial court substantially complies with the
admonishment requirements,


 Lee v. State, 39 S.W.3d 373, 375 (Tex. App.—Houston [1st Dist.]
2001, no pet.); see Tex. Code Crim. Proc. Ann. art. 26.13 (Vernon Supp. 2004). Because proper
admonishment by the trial court creates a prima facie showing that a guilty plea was knowingly and
voluntarily made, Crawford v. State, 890 S.W.2d 941, 944 (Tex. App.—San Antonio 1994, no pet.),
a heavy burden is placed on the appellant to overcome the presumption of regularity of the judgment
and proceedings, Lee, 39 S.W.3d at 375.
            Despite Armstrong's claim that no reasonable person examining his past record, history, and
conduct could believe he was sane at the time he committed the underlying offense or when he
entered into the plea agreement, there is ample evidence to the contrary. Armstrong's expert may
have testified that Armstrong was incompetent at the time he committed the underlying offense,
entered into the plea agreement, and allegedly failed to comply with the terms of community
supervision, but the State's expert testified that Armstrong was not insane at the time of the offense,
was competent to stand trial, and was capable of rationally discussing the charges against him, the
possible penalties that could be imposed, and the impact of a possible plea agreement.


 As the sole
trier of fact, the trial court could reasonably conclude Armstrong did, in fact, enter his plea
knowingly and voluntarily. See T.R.S., 115 S.W.3d at 321.
Conclusion
            Reviewing the evidence in the light most favorable to the verdict, Garrett v. State, 619
S.W.2d 172 (Tex. Crim. App. 1981), we conclude the trial court did not abuse its discretion by
granting the State's motion to revoke Armstrong's community supervision. Accordingly, we affirm
the trial court's judgment.
 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          April 22, 2004
Date Decided:             May 12, 2004

Publish