**Wesley Carl ARMSTRONG, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–03–00083–CR.**

Court of Appeals of Texas,
Texarkana.

Submitted April 22, 2004.

Decided May 12, 2004.

---

Judy Hodgkiss, George L. Preston, Paris, TX, for appellant.

Cynthia L. Braddy, Asst. County Atty., Mark S. Burtner, Lamar County District Atty., Paris, TX, for State.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Chief Justice MORRISS.

Wesley Carl Armstrong asks us to reverse the revocation of his community supervision[1] principally because of his asserted lack of mental capacity. In eight points of error, Armstrong contends (1) the trial court abused its discretion by revoking community supervision because the affirmative defense of insanity was proved by a preponderance of the evidence; (2) the trial court violated his due process rights and abused its discretion by revoking community supervision for failure to pay various fees, court costs, fines, and restitution because he did not have the ability to pay, and the State did not prove that the failure to pay was intentional; (3) the trial court violated his due process rights and abused its discretion by revoking community supervision because the terms of supervision with respect to the report date and treatment requirements were vague or ambiguous; and (4) the conviction for which he was placed on community supervision should be set aside because he was insane at the time the original offense was committed or incompetent at the time he pled guilty. We affirm.

*Standard of Review*

The decision whether to revoke community supervision rests within the discretion of the trial court. *Cardona v. State*, 665 S.W.2d 492, 493 (Tex.Crim.App.1984); *In re T.R.S.*, 115 S.W.3d 318, 320 (Tex.App.—Texarkana 2003, no pet.). As the sole trier of fact, the trial court determines the credibility of the witnesses, accepting or rejecting any or all of the witnesses' testimony. *T.R.S.*, 115 S.W.3d at 321 (citing *Mattias v. State*, 731 S.W.2d 936, 940 (Tex.Crim.App.1987); *Jones v. State*, 787 S.W.2d 96, 97 (Tex.App.—Houston [1st Dist.] 1990, pet. ref'd)). The court's discretion, however, is not absolute and does not authorize the revocation of community supervision without evidence of a violation of one of the conditions imposed. *T.R.S.*, 115 S.W.3d at 320 (citing *DeGay v. State*, 741 S.W.2d 445, 449 (Tex.Crim.App.1987); *Scamardo v. State*, 517 S.W.2d 293, 297 (Tex.Crim.App.1974)). That is, the State must prove, by a preponderance of the evidence, that the conditions of supervision were violated. *Cobb v. State*, 851 S.W.2d 871, 873 (Tex.Crim.App.1993); *Cardona*, 665 S.W.2d at 493. "This standard is met," and revocation should be affirmed, "when the greater weight of the credible evidence creates a reasonable belief the defendant violated a condition of his or her [community supervision] as ... alleged." *T.R.S.*, 115 S.W.3d at 321 (citing *Martin v. State*, 623 S.W.2d 391, 393 n.5 (Tex.Crim. App.1981); *Allbright v. State*, 13 S.W.3d

---

1. After being charged with aggravated assault of a public servant and evading arrest, Armstrong pled guilty to the lesser-included offense of assault of a public servant, and the trial court found him guilty and sentenced him to ten years' confinement, suspended for seven years' community supervision. When Armstrong allegedly failed to meet the requirements of community supervision as outlined in the court's judgment and order, the State filed a motion to revoke, which was granted in March 2003.

817, 819 (Tex.App.—Fort Worth 2000, pet. ref'd); *Stevens v. State,* 900 S.W.2d 348, 351 (Tex.App.—Texarkana 1995, pet. ref'd)).

*Insanity Defense*

■ In his first point of error, Armstrong contends the trial court abused its discretion by revoking community supervision because he proved the affirmative defense of insanity by a preponderance of the evidence. He argues that, because he was insane and unable to make reasonable decisions, he should not be held responsible for failing to comply with the requirements of community supervision. The defense of insanity, however, has not been recognized in Texas as generally available in revocation proceedings.[2]

In support of the argument that he is entitled to mount an insanity defense at a revocation hearing, Armstrong relies on Section 8.01 of the Texas Penal Code and *Casey v. State,* 519 S.W.2d 859 (Tex.Crim. App.1975). *See* TEX. PEN. CODE ANN. § 8.01 (Vernon 2003). Although the *Casey* court did entertain an appellant's argument that he established the affirmative defense of insanity, *Casey* does not apply to this case because, unlike the present case, the State applied to revoke Casey's community supervision only because he allegedly committed a new criminal offense. *Id.* at 860–61. Here, the State alleges Armstrong violated the terms of his community supervision with only noncriminal violations, including (1) failure to report;

(2) failure to pay court costs, fees, and restitution; and (3) failure to comply with all treatment recommended by the Texas Department of Mental Health and Mental Retardation.

■ Although no Texas cases directly address the availability of an insanity defense at a revocation hearing, the Texas Court of Criminal Appeals has stated that, during a proceeding to revoke community supervision, "a defendant need not be afforded the full range of constitutional and statutory protections available at a criminal trial." *Davenport v. State,* 574 S.W.2d 73, 75 (Tex.Crim.App.1978) (citing *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973)). "At such a proceeding, guilt or innocence is not at issue, and the trial court is not concerned with determining the defendant's original criminal culpability. The question at a revocation hearing is whether the appellant broke the contract he made with the court after the determination of his guilt.'" *Davenport,* 574 S.W.2d at 75 (quoting *Kelly v. State,* 483 S.W.2d 467, 469 (Tex.Crim.App.1972) ("It should be remembered that a defendant is not entitled to probation as a matter of right; granting probation is entirely within the trial court's discretion.")).

Federal courts that have addressed the issue have determined the insanity defense is not available in revocation proceedings. In *United States v. Brown,* 899 F.2d 189 (2d Cir.1990), for example, the Second Circuit Court of Appeals took a position simi-

2. Texas courts that have entertained the insanity defense at a revocation hearing have done so only in those circumstances in which the State has alleged that a criminal offense—as opposed to a noncriminal, "technical" violation—has been committed in violation of the terms of community supervision. *See, e.g., Martin v. State,* 605 S.W.2d 259 (Tex.Crim. App.1980); *Leyva v. State,* 552 S.W.2d 158 (Tex.Crim.App.1977); *Casey v. State,* 519 S.W.2d 859 (Tex.Crim.App.1975); *Demou-*

*chette v. State,* 502 S.W.2d 712 (Tex.Crim. App.1973); *Long v. State,* 764 S.W.2d 30 (Tex. App.—San Antonio 1989, pet. ref'd); *Hair v. State,* Nos. A14–85–829–CR, C14–85–834–CR, 1987 WL 7643 (Tex.App.—Houston [14th Dist.] Mar.12, 1987, no pet.) (not designated for publication); *Morales v. State,* No. 01–84–822–CR, 1985 Tex.App. LEXIS 7164 (Tex. App.—Houston [1st Dist.] May 23, 1985, no pet.) (not designated for publication).

lar to the position taken in *Davenport,* noting that revocation proceedings are distinguished from criminal prosecutions because the probationer already stands convicted of a crime and is, for that reason, not afforded "the full panoply of procedural safeguards associated with a criminal trial." *Id.* at 192 (quoting *Black v. Romano,* 471 U.S. 606, 613, 105 S.Ct. 2254, 85 L.Ed.2d 636 (1985)).

> In many revocation hearings, it is irrelevant whether a probationer can be held criminally responsible for his conduct. Because many of the routinely imposed conditions of probation do not, if violated, constitute criminal offenses, a judge considering probation revocation often has no occasion to determine criminality or offense elements such as criminal intent. Moreover, the fact that the probationer violated a condition may be sufficient proof that probation is not serving the purpose for which it was granted. For example, the probationer who fails to keep his probation officer informed of his residence may be found no longer to merit probation, whether his omission results from willfulness, carelessness, *or impaired mental capacity.*

*Id.* at 193 (citations omitted and emphasis added). The State's motion to revoke community supervision did not allege Armstrong committed a criminal offense for which the insanity defense was available, but alleged noncriminal violations only. For this reason, we overrule this point of error because it is irrelevant whether Armstrong could be held criminally responsible for his conduct in violating the terms of his community supervision.

Even if an insanity defense could be viable for noncriminal violations, Armstrong's point of error would fail. On this record, we could not conclude the trial court abused its discretion in revoking Armstrong's community supervision.

There is conflicting expert testimony in the record, and the fact-finder is entitled to disbelieve a witness.

> [A] few of the many obstacles faced by an accused in relying upon the defense of insanity in a revocation hearing [include]:
>
> 1. Such a defense must be established by the appellant by a preponderance of the evidence; and, he is presumed to be sane. *Casey v. State,* 519 S.W.2d 859, 861 (Tex.Cr.App.1975).
>
> 2. It is not necessary for the State to present expert medical evidence that a defendant is sane to refute defense experts. *Graham v. State,* 566 S.W.2d 941, 950 (Tex.Cr.App.1978).
>
> . . . .
>
> 4. The State need establish the violation only by a preponderance of the evidence. *Scamardo v. State,* 517 S.W.2d 293, 297–298 (Tex.Cr.App.1974). n3
>
> 5. The only question legitimately before this appellate court in the review of the probation revocation is whether or not the trial court abused its discretion. *Isabell v. State,* 494 S.W.2d 572, 573–574 (Tex.Cr.App.1973).
>
> 6. The trial judge is the sole trier of the facts, the credibility of the witnesses and the weight to be given to the testimony. *Diaz v. State,* 516 S.W.2d 154, 156 (Tex.Cr.App.1974).

*Jackson v. State,* 628 S.W.2d 120, 121–22 (Tex.App.—Beaumont 1981, no pet.) (footnotes omitted).

*Inability to Pay*

■ In his second and third points of error, Armstrong argues that, because he was unable to pay and the State did not prove that the failure to pay was intentional, the trial court violated his due process rights and abused its discretion by revoking community supervision for failure to

pay various fees, court costs, fines, and restitution. Both the record and Armstrong's own brief, however, indicate that the affirmative defense of inability to pay was never presented to the trial court. Instead, Armstrong argues the failure to pay could not have been intentional in light of expert testimony indicating he was incompetent and incapable of making rational decisions. Nevertheless, the State's evidence reasonably supports the conclusion that Armstrong understood the terms of community supervision at the time of the hearing, but failed to meet his financial obligations by consciously choosing to stop taking his medications and to remain at home rather than seek employment.[3] Because the trial court could easily have inferred from these facts that Armstrong's failure to pay was intentional, we cannot conclude the court abused its discretion.

*Vague or Ambiguous Requirements*

■ In his fourth, fifth, and sixth points of error, Armstrong contends the trial court violated his due process rights and abused its discretion in revoking community supervision because the terms of supervision addressing the report date and treatment requirements were vague or ambiguous. In order to object to the terms of community supervision, however, a defendant must complain at trial to the conditions he or she finds objectionable. *Rickels v. State,* 108 S.W.3d 900, 902 (Tex. Crim.App.2003). By failing to so complain, a defendant affirmatively waives any objections he or she may have had. *Id.* Armstrong not only failed to object to the terms of community supervision as vague or ambiguous, but also stated to the court that he understood he was to report weekly for treatment and that he would take

any medications prescribed during the course of treatment.

*Mental Capacity for Underlying Conviction*

■ In his seventh and eighth points of error, Armstrong contends the underlying conviction—for which he was originally placed on community supervision—should be set aside because he was insane at the time the offense was committed or incompetent at the time he pled guilty. Ordinarily, the validity of the original conviction from which no appeal is taken cannot be raised on appeal from a revocation order. *Whetstone v. State,* 786 S.W.2d 361, 363 (Tex.Crim.App.1990). The Texas Court of Criminal Appeals has observed that "a defendant placed on 'regular' community supervision may raise issues relating to the conviction ... only in appeals taken when community supervision is originally imposed." *Manuel v. State,* 994 S.W.2d 658, 661 (Tex.Crim.App.1999). Armstrong neither filed a motion for new trial nor appealed his original conviction. Citing *Perkins v. State,* 504 S.W.2d 458 (Tex.Crim.App.1974), *overruled on other grounds, Ex parte Taylor,* 522 S.W.2d 479 (Tex.Crim.App.1975), however, Armstrong argues that whether a guilty plea was made knowingly and voluntarily may be raised at a hearing on a motion to revoke community supervision and that his conviction should be set aside because he was neither sane when he committed the original offense nor competent when he entered his plea. While a guilty plea must be freely, voluntarily, and knowingly made, *Ex parte Evans,* 690 S.W.2d 274, 276 (Tex. Crim.App.1985), assuring that a defendant pleading guilty to a criminal offense does so with full understanding of the charges

---

**3.** In fact, the State's expert not only testified Armstrong was competent to take his prescribed medications, but also agreed the failure to take them would be the result of a conscious decision.

and the consequences of his or her plea, *Basham v. State,* 608 S.W.2d 677, 678 (Tex.Crim.App.1980), the voluntariness of the plea is presumed once the trial court substantially complies with the admonishment requirements,[4] *Lee v. State,* 39 S.W.3d 373, 375 (Tex.App.—Houston [1st Dist.] 2001, no pet.); *see* TEX. CODE CRIM. PROC. ANN. art. 26.13 (Vernon Supp.2004). Because proper admonishment by the trial court creates a prima facie showing that a guilty plea was knowingly and voluntarily made, *Crawford v. State,* 890 S.W.2d 941, 944 (Tex.App.—San Antonio 1994, no pet.), a heavy burden is placed on the appellant to overcome the presumption of regularity of the judgment and proceedings, *Lee,* 39 S.W.3d at 375.

Despite Armstrong's claim that no reasonable person examining his past record, history, and conduct could believe he was sane at the time he committed the underlying offense or when he entered into the plea agreement, there is ample evidence to the contrary. Armstrong's expert may have testified that Armstrong was incompetent at the time he committed the underlying offense, entered into the plea agreement, and allegedly failed to comply with the terms of community supervision, but the State's expert testified that Armstrong was not insane at the time of the offense, was competent to stand trial, and was capable of rationally discussing the charges against him, the possible penalties that could be imposed, and the impact of a possible plea agreement.[5] As the sole trier of fact, the trial court could reasonably conclude Armstrong did, in fact, enter his

plea knowingly and voluntarily. *See T.R.S.,* 115 S.W.3d at 321.

*Conclusion*

Reviewing the evidence in the light most favorable to the verdict, *Garrett v. State,* 619 S.W.2d 172 (Tex.Crim.App.1981), we conclude the trial court did not abuse its discretion by granting the State's motion to revoke Armstrong's community supervision. Accordingly, we affirm the trial court's judgment.

---

4. Armstrong was properly admonished both orally and in writing, he responded to all of the court's questions, stated he understood the admonishments and the consequences of his plea, and even asked questions for clarification.

5. In reviewing these conflicting opinions, it is worth noting the time frame within which each expert evaluated Armstrong relative to the time of the offense and plea. The State's expert evaluated Armstrong on December 21, 2001, the day after the grand jury indicted him and six days before he pled guilty and the trial court rendered judgment; Armstrong's expert evaluated Armstrong on May 9, 2002.